IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **KIMBERLY STARLING,** individually and on behalf of all others similarly situated, | Case No. 4:25-cv-993 |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **HOMEOVER GENERAL CONTRACTORS, LLC** | |
| **and** | |
| **"STORM LEADS INNOVATION"** | |
| *Defendants.* | |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Kimberly Starling ("Plaintiff" or "Ms. Starling") brings this Class Action Complaint and Demand for Jury Trial against Defendant HomeOver General Contractors, LLC and Storm Leads Innovation ("Defendants") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Storm Leads Innovation violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls. These calls were placed by Storm Leads for the benefit of HomeOver General Contractors, LLC, who hired Storm Leads to place the calls at issue.

## PARTIES

4. Plaintiff Kimberly Starling is an individual.

5. Defendant HomeOver General Contractors, LLC, is a Carrollton, Texas-based company that sells roofing and contracting services.

6. Defendant Storm Leads Innovation is a telephone lead generator hired by HomeOver, but does not appear to be a legally registered or cognizable entity in any state or jurisdiction.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has general personal jurisdiction over HomeOver because it is a resident corporation of Texas.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant HomeOver is a resident of this State and is a resident of this District, having its registered office in New Carrollton.

## BACKGROUND

**A.   The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

**C. The Texas Business and Commerce Code**

14. Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

15. The burden of proof lies on Defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id.* § 302.051.

4

16. The sale of contracting and home improvement services is not a product or service for which there is an exemption to the Code. *Id*. § 302.051.

17. Defendant HomeOver is not registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying "HomeOver" or "HomeOver General" as either a DBA or seller name returns no results).

## FACTUAL ALLEGATIONS

17. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the calls at issue.

19. Plaintiff's telephone number, (817) 689-XXXX, is a residential, non-commercial cellular telephone number.

20. Plaintiff's telephone number, (817) 442-XXXX, is a residential, non-commercial landline telephone number.

21. Ms. Starling uses the numbers for personal, residential, and household reasons.

22. The numbers are residential telephone lines because they are assigned to a residential telephone exchange service for consumers and are not assigned to a telephone exchange service for businesses.

23. Moreover, the cellular telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

24. Both numbers were listed on the Do Not Call Registry for years prior to the calls at issue.

25. In fact, the Plaintiff previously received unwanted calls from Defendant HomeOver in March through April of 2021 and requested that they stop and to place her cellular telephone number on Defendant HomeOver's internal Do Not Call list.

26. However, the calls continued throughout November of 2021 through June of 2022.

27. On November 16, 2021, a call displaying 817-562-4753 reached Plaintiff's cell. The caller identified themselves as "HomeOver" and solicited Plaintiff to purchase and schedule a roofing inspection in connection with a roof-replacement job. An appointment was set for November 17, 2021.

28. On November 17, 2021, an individual identifying himself as Clayton Kramer from "HomeOver General" called Plaintiff to confirm the appointment and texted Plaintiff a business card. Plaintiff informed him Plaintiff was not available and would call back to reschedule.

29. Later on that same day Plaintiff emailed HomeOver's owner, Josh Nelson, regarding the illegal calls she continued to receive. Mr. Nelson telephoned Plaintiff and provided contact information for the marketer responsible for the calls—"Jack" with Defendant Storm Leads Innovation—and a callback number of 888-459-9138.

30. Despite the notice provided to Mr. Nelson and Storm Leads Innovation as described above, additional telephone solicitations continued.

31. On January 3, 2022, a call displaying 817-753-1543 reached Plaintiff's landline. The caller identified as calling from "HomeOver General Contractors," solicited Plaintiff for a roof inspection related to roof- replacement work, and scheduled an inspection for the next day. The caller provided 888-459-9138 as a callback number, the same number mentioned above, if Plaintiff needed to cancel. No one appeared for the inspection.

32. On February 10, 2022, a call displaying 817-285-5041 reached Plaintiff's cell. The caller identified as calling from "HomeOver General Contractors", solicited Plaintiff for a roof inspection related to roof replacement work, and scheduled an inspection for the next day. The caller again provided 888-459-9138 as a callback number if Plaintiff needed to cancel. No one appeared for the inspection.

33. On March 10, 2022, a call displaying 469-896-0151 reached Plaintiff's cell. The caller identified as calling from "HomeOver General Contractors" and attempted to solicit roof-replacement services for a home Plaintiff previously owned. During this call, Plaintiff expressly requested to be added to the caller's do-not-call list, despite having previously asked twice.

34. On June 6, 2022 at approximately 10:45 a.m., plaintiff received a call displaying 817-945-4531 reached Plaintiff's landline. The caller used a fake alias—"TM Roofing"—and attempted to sell and schedule a roof inspection and roof replacement. The caller provided the same 888-459-9138 number as the callback number. Plaintiff stated that the parties could not agree on a time and that the caller did not need to call back.

35. But on June 6, 2022, approximately eight minutes later, the same caller, using the same caller ID, called Plaintiff's landline again. A new appointment for the next day was scheduled, but no one appeared.

36. On information and belief, the repeated confirmation of the same callback number, 888-459-9138, across multiple calls and caller identities (including the fake alias) indicates the calls were placed by, at the direction of, and/or for the benefit of the same lead generation and marketing enterprise working with HomeOver (including Storm Leads Innovation and "Jack"), and that HomeOver authorized, ratified, and failed to supervise these calls after receiving actual notice of Plaintiff's complaints and do not call requests in 2021.

37. Plaintiff did not provide prior express consent to receive these telephone solicitations on Plaintiff's landline or Plaintiff's cell, had no preexisting business relationship with any caller at the time of the initial calls, and expressly requested placement on the caller's internal do not call list on at least three separate occasions. The calls nevertheless continued thereafter.

38. Each call described above was a telephone solicitation placed to sell roofing services by inducing Plaintiff to schedule a roof inspection and ultimately purchase a roof replacement. The calls were not for emergency purposes.

39. The text messages and calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number (Spoofed) | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|
| 817-562-4753 | Y | JOSEPH,DIVYA | FRONTIER |
| 817-753-1543 | Y | KELLER TX | BANDWIDTH |
| 817-285-5041 | Y | TERRELL, TX | TELNYX |
| 469-896-0151 | Y | TERRELL, TX | TELNYX |
| 817-945-4531 | Y | FORT WORTH TX | IP HORIZON |

40. As the aforementioned chart shows, the CNAM transmitted by the Defendants' ultimate telephone carriers, apparently spoofed the caller IDs, and not HomeOver's name or telemarketer Storm Leads's name, let alone a telephone number where Plaintiff could call during business hours to lodge a do not call request.

41. As further demonstrated and evidenced through these calls, Defendant Storm Leads was apparently authorized to state that they were HomeOver and calling from HomeOver.

42. In other words, Defendant Storm Leads is a lead generator who was hired by HomeOver to sell leads to HomeOver using HomeOver's own brand name.

43. The purpose of the calls sent by Defendant Storm Leads was therefore to solicit the Plaintiff to sign up for the Defendant HomeOver's services.

44. HomeOver relies on telemarketing to generate new customers through vendors it uses, like Storm Leads.

45. HomeOver hired Storm Leads to contact potential new leads and customers *en masse* and only sell them the purportedly interested ones.

46. The Plaintiff did not consent to telemarketing calls from the Defendants.

47. The Plaintiff never did business with the Defendants.

48. The calls were not necessitated by an emergency.

49. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

50. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

51. The FCC has instructed that sellers such as HomeOver may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such as Storm Leads:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent'

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

52. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

53. HomeOver is liable for Defendant Storm Leads's conduct and telemarketing calls placed by Storm Leads and transferred to HomeOver and its agents to generate customers for HomeOver and its agents, including the Plaintiff.

54. HomeOver was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

55. To do so, HomeOver hired Storm Leads to orchestrate an *en masse* telemarketing campaign for Storm Leads to contact customers by telephone.

56. A reasonable seller like HomeOver whose agents are sending calls would investigate into the reasons why their agents and telemarketers would be sending calls to numbers on the do not call registry without consent, let alone why Storm Leads would continue to call people after they asked not to.

57. It did not.

58. HomeOver hired Storm Leads without a proper investigation and did not terminate them when they were informed of Storm Leads' illegal calling conduct.

59. As such, they knowingly ratified Storm Leads' conduct.

60. From the consumer's perspective, Storm Leads wields apparent authority: it schedules appointments with clients in HomeOver's name, and represents itself as HomeOver on the calls, making any reasonable called party believe the caller is HomeOver itself.

61. As demonstrated from the Plaintiff's own experience, a reasonable called party was led to believe Storm Leads was authorized to act on HomeOver's behalf or that Storm Leads *was* HomeOver, thereby creating apparent authority.

62. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

63. The calls were unwanted.

64. The calls were nonconsensual encounters.

65. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

66. Plaintiff never provided her consent or requested the calls.

67. Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

68. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

69. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1)

telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from HomeOver, Storm Leads, or a third party acting on Storm Leads's behalf, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

**Texas Business and Commerce Code Class:** All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendants, (2) at any time during which Defendants were not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

70. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

71. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

72. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

73. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

    a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

    c. whether Defendants transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

    d. whether the CPN or ANI was transmitted at all, and, if so, whether such CPN or ANI would permit an individual to make an internal do not call request during regular business hours;

    e. whether Defendants have violated the Texas Business and Commerce Code's provisions;

    f. Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    g. Whether Defendants should be held liable for violations committed on its behalf, together with the corresponding nature and extent of liability as between and among the Defendants; and

    h. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

74. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

75. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of

the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.  Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.  Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

76.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.  It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

78.  Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

79.  These violations were willful or knowing.

80.  As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff

and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

81. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

82. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

84. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

85. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, and without the provision of accurate caller ID name.

86. These violations were willful or knowing.

87. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

88. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III
### Violations of the TCPA, 47 U.S.C. § 227
**(On Behalf of Plaintiff and the Internal DNC Class)**

89. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

90. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

91. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

92. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## COUNT IV
### Violations of Texas Business and Commerce Code § 302.101
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

93. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

94. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

95. Defendants' violations were negligent, willful, or knowing.

96. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendants for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Damages to Plaintiff and members of the Texas Business and Commerce Code Class pursuant to that statute;

F. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the

    National Do Not Call Registry, to those who have asked them to stop, or while failing to transmit the caller ID information required by law;

G.  Attorneys' fees and costs, as permitted by law; and

H.  Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 9th day of September, 2025.

                                  */s/ Andrew Roman Perrong*
                                  Andrew Roman Perrong, Esq.
                                  Perrong Law LLC
                                  2657 Mount Carmel Avenue
                                  Glenside, Pennsylvania 19038
                                  Phone: 215-225-5529 (CALL-LAW)
                                  Facsimile: 888-329-0305
                                  a@perronglaw.com