## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **KIMBERLY STARLING, Individually and on behalf of all others similarly situated,** | § § § § | |
| *Plaintiff* | § § | |
| **v.** | § § | **Case No. 4:25-CV-993** |
| **HOMEOVER GENERAL CONTRACTORS, LLC** | § § § | |
| **AND** | § § | |
| **"STORM LEADS INNOVATION",** *Defendants* | § § | |

## <u>DEFENDANT HOMEOVER GENERAL CONRACTORS, LLC'S MOTION TO DISMISS COMPLAINT</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    ALLEGATIONS OF THE COMPLAINT............................................................... 4

    A.     The Alleged Calls to Plaintiff ...................................................................... 4

    B.     HomeOver's Alleged Relationship with Defendant Storm Leads........................ 5

    C.     Plaintiff's Claims ....................................................................................... 6

III.   LEGAL STANDARD............................................................................................... 6

IV.    ARGUMENT.......................................................................................................... 8

    A.     The Complaint Does Not Sufficiently Allege That HomeOver is
        Vicariously Liable For The Alleged Calls to Plaintiff.......................................... 8

        1.     Vicarious Liability Under The TCPA........................................................ 8

        2.     There Are No Facts Showing Actual Authority ......................................... 8

        3.     There Are No Facts Showing Apparent Authority ................................... 10

        4.     There Are No Facts Showing Ratification............................................... 11

    B.     The DNC Provisions Do Not Apply To Cellphones............................................ 12

    C.     The National DNC Claim Fails Because There Are No Facts Showing
        That The Alleged Calls Were "Telephone Solicitations" And That Plaintiff
        Personally Registered Her Phone Numbers With The NDNCR............................ 14

        1.     Plaintiff Failed to Sufficiently Allege A "Telephone Solicitation".......... 14

        2.     Plaintiff Does Not Allege That She Personally Registered Her
            Phone Numbers With The NDNCR.......................................................... 16

    D.     The Internal DNC Claim Fails Because Plaintiff Failed To Identify An
        Underlying Regulation Under Section 227(c) That HomeOver Allegedly
        Violated And She Does Not Allege That She Asked Her Landline To Be
        Added To HomeOver's Internal Do-Not-Call List............................................. 17

    E.     The Caller ID Claim Fails Because There Is No Private Right Of Action
        To Enforce 47 C.F.R. §64.1601(e) And Plaintiff Failed to Sufficiently
        Allege That The Calls Constituted "Telemarketing"........................................... 18

    F.     Plaintiff's Claim Under The TBCC § 302.101 Fails Because There Are No
        Facts Showing That The Texas Registration Requirement Applied To The
        Alleged Calls.......................................................................................... 19

    G.     The Request For Attorney's Fees Must Be Dismissed Because The TCPA
        Does Not Authorize The Recovery Of Fees ..................................................... 19

    H.     The Request For Injunctive Relief Must Be Dismissed Because It Is
        Overbroad ............................................................................................. 20

V.     CONCLUSION........................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Aderhold v. car2go N.A. LLC*,
   668 Fed.Appx. 795 (9th Cir. 2016)........................................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................... 7

*Barnhart v. Sigmon Coal Co., Inc.*,
   534 U.S. 438 (2002)............................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................... 7

*Callier v. Greensky, Inc.*,
   2021 U.S. Dist. LEXIS 126769 (W.D. Tex. May 10, 2021)................................. 14

*Callier v. Optimum Solar USA*,
   2024 U.S. Dist. LEXIS 51467 (W.D. Tex. Mar. 21, 2024) ................................. 9, 16

*Callier v. Sunpath Ltd.*,
   2020 U.S. Dist. LEXIS 256792 (W.D. Tex. Aug. 10, 2020) ........................ 9, 10, 11

*Callier v. Wide Merch. Inv., Inc.*,
   671 F.Supp.3d 736 (W.D. Tex. Apr. 27, 2023) .................................................. 9, 10

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016)............................................................................................... 20

*Conley v. Gibson*,
   355 U.S. 41 (1957)................................................................................................. 7

Cunningham v. Air Voice, Inc.,
   2020 U.S. Dist. LEXIS 51585 (E.D. Tex. Feb. 14, 2020) ................................... 14

*Cunningham v. Britereal Mgmt.*,
   2020 U.S. Dist. LEXIS 236135 (E.D. Tex. Nov. 20, 2020) ................................. 14

*Cunningham v. Lifestyles Dev., LLC*,
   2019 U.S. Dist. LEXIS 154112 (E.D. Tex. Aug. 8, 2019) ................................... 8

*Cunningham v. Mark D. Guidubaldi and Assocs., LLC*,
   2019 U.S. Dist. LEXIS 38652 (E.D. Tex. Jan. 11, 2019)..................................... 18

*Dobronski v. Selectquote Ins. Servs.*,
   462 F.Supp.3d 784 (E.D. Mich. May 26, 2020) ................................................... 18

*Dobronski v. Tobias & Assocs., Inc.*
   , 2024 U.S. Dist. LEXIS 47309 (E.D. Mich. Mar. 18, 2024) ............................... 18

*Dobronski v. Total Ins. Brokers, LLC*,
   2021 U.S. Dist. LEXIS 186528 (E.D. Mich. Sep. 29, 2021)................................ 18

*Dongbu USA, Inc. v. Partners in Steel Int'l, LLC*,
   2015 U.S. Dist. LEXIS 188029 (S.D. Tex. July 17, 2015)................................... 20

*Dukes v. DirectTV LLC*,
   2016 U.S. Dist. LEXIS 153948 (N.D. Tex. Nov. 7, 2016)................................... 19

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)............................................................................................... 13

*Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*,
   2025 U.S. Dist. LEXIS 76839 (W.D. Tex. Apr. 15, 2025)........................... 9, 10, 11

*Griffin v. American-Amicable Life Ins. Co. of Texas*,
    2024 U.S. Dist. LEXIS 175344 (D. Or. Sep. 27, 2024)........................................ 18
*Hamilton v. Spurling*,
    2013 U.S. Dist. LEXIS 38585 (S.D. Ohio Mar. 20, 2013) ................................... 16
*Heller v. Marriott Vacations Worldwide Corp.*,
    2023 U.S. Dist. LEXIS 183421 (W.D. Tex. Oct. 11, 2023) .................. 8, 9, 10, 11
*Hunsinger v. Dynata LLC*,
    2023 U.S. Dist. LEXIS 37879 (N.D. Tex. Feb. 7, 2023)............................ 8, 9, 15
*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004) ................................................................................ 20
*Lemos v. Credit One Bank, N.A.,*
    807 Fed. Appx. 698 (9th Cir. 2020) ..................................................................... 20
*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) ............................................................................................. 13
*Meyer v. Capital Alliance Group*,
    2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017) .................................... 18
*Morris v. Copart*,
    2016 U.S. Dist. LEXIS 155755 (E.D. Tex. Nov. 9, 2016) ................................... 16
*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) .................................................................................. 7
*Rogers v. Assur. IQ, LLC*,
    2023 U.S. Dist. LEXIS 51955 (W.D. Wash. Mar. 27, 2023) ............................... 17
*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    2022 U.S. Dist. LEXIS 124614 (N.D. Iowa Jun. 9, 2022) ................................... 17
*Russello v. United States*,
    464 U.S. 16 (1983) ............................................................................................... 13
*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) ............................................................................................. 13
Strange v. Doe #1,
    2020 U.S. Dist. LEXIS 84761 (W.D. La. May 12, 2020)..................................... 14
*Whatley v. Creditwatch Servs.*,
    2014 U.S. Dist. LEXIS 42990 (E.D. Tex. Mar. 31, 2014)................................... 19
*Worsham v. Travel Options*,
    2016 U.S. Dist. LEXIS 118774 (D. Md. Sep. 1, 2016) ........................................ 18

**Statutes**
47 C.F.R. § 64.1200 ................................................................................................... 14
47 C.F.R. § 64.1200(c)......................................................................................... 17, 20
47 C.F.R. § 64.1200(c)(2)................................................................... 2, 6, 12, 14, 16
47 C.F.R. § 64.1200(d) .............................................................................................. 20
47 C.F.R. § 64.1200(e) .............................................................................................. 13
47 C.F.R. § 64.1200(f)(1) .......................................................................................... 18
47 C.F.R. § 64.1200(f)(10) ........................................................................................ 18
47 C.F.R. § 64.1200(f)(15) ............................................................................. 15, 16, 19
47 C.F.R. § 64.1601(e)............................................................................................ 3, 18
47 C.F.R. § 64.1601(e)(1)........................................................................................ 6, 18
47 C.F.R. §64.1200(f)(5) ........................................................................................... 15

47 C.F.R. §64.1601(e)...................................................................................................... 18
47 U.S.C. § 227 ............................................................................................................ 1, 19
47 U.S.C. § 227(b) ............................................................................................................ 13
47 U.S.C. § 227(b)(1)(a)(iii) ............................................................................................ 13
47 U.S.C. § 227(c) ..................................................................................... 2, 12, 13, 17, 18
47 U.S.C. § 227(c)(1) ....................................................................................................... 12
47 U.S.C. § 227(c)(3) ....................................................................................................... 12
47 U.S.C. § 227(c)(5) ....................................................................................................... 14
47 U.S.C. §227(c)(5) ............................................................................................ 14, 16, 17
TBCC § 302.101 ........................................................................................................... 3, 19

**Rules**
Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 6, 7
Fed. R. Civ. P. 8 ................................................................................................................. 6

Defendant HomeOver General Contractors, LLC ("HomeOver") by and through its undersigned counsel, hereby moves to dismiss Plaintiff Kimberly Starling's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES TO BE DECIDED
### (Local Rule CV-7(a)(1))

The motion raises the following issues to be decided:

1.    Whether Plaintiff's claims against HomeOver should be dismissed because Plaintiff has failed to allege that HomeOver is directly or vicariously liable for the alleged wrongful acts; and,

2.    Whether Plaintiff has sufficiently alleged the requisite elements of her claims against HomeOver.

## I.    __INTRODUCTION__

This is one of at least __eight__ federal lawsuits serial Plaintiff Kimberly Starling ("Plaintiff") has filed within the past two years where she seeks to represent a nationwide class of persons for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*[1] Here, Plaintiff seeks to hold Defendant HomeOver General Contractors LLC ("HomeOver") liable for calls she admits were made over two and a half years ago by a different defendant—Storm

---

[1] *See, e.g.*, *Starling v. Henegar*, Case No.  3:24-cv-3043 (N.D. Tex.) (filed 12/04/24); *Starling v. Economic Trading, Inc*., Case No. 4:24-cv-1135 (N.D. Tex.) (filed 11/19/24); *Starling v. Farmers Ins. Exch*., Case No. 2:24-cv-8644 (C.D. Cal.) (filed 10/08/24); *Starling v. Karma Financial Grp. LLC*, Case No. 1:24-cv-1670 (N.D. Ohio) (filed 09/29/24); *Starling v. Mara Day Spa LLC*, Case No. 4:24-cv-917 (N.D. Tex.) (filed 09/26/24); *Starling v. Newsmax Media, Inc*., Case No. 4:24-cv-797 (N.D. Tex.) (filed 08/19/24); *Starling v. Doe Corp*., Case No. 4:24-cv-410 (N.D. Tex) (filed 05/08/24).  In addition, Plaintiff repeatedly files TCPA cases in Texas Small Claims courts, including one against HomeOver that she filed earlier this year, which was dismissed for lack of proper jurisdiction.

Leads Innovation ("Storm Leads").[2]  Her claims fail because she has not pleaded <u>facts</u> that plausibly show HomeOver is vicariously liable for any of the alleged calls. Nor has she adequately alleged any violation of the TCPA or state law.

Plaintiff does not allege HomeOver initiated any of the calls to her. For this reason, her claim fails unless she alleges sufficient facts which, if proven true, provide a legal basis for holding HomeOver vicariously liable for the alleged calls.  She has not even come close.  Nothing is plead to support liability under any available theory of vicarious liability (*e.g.*, actual authority, apparent authority, ratification). At most, Plaintiff alleges HomeOver hired Storm Leads to find potential new customers, and that a handful of callers identified themselves as calling "from HomeOver General Contractors."  Courts within this district have routinely found similar allegations insufficient to plead vicarious liability under the TCPA.

Moreover, Plaintiff is not entitled to relief under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (the "DNC provisions") for any alleged calls to her <u>cellphone</u>.  These provisions expressly apply only to "residential telephone subscribers," not to cellular phone subscribers. Plaintiff's attempt to simply label her cellphone as a "residential telephone" does not change the result.  The plain language of the TCPA distinguishes between calls made to cellphones, on the one hand, and calls to residential telephones, on the other. Several courts, including courts within this Circuit, have dismissed similar TCPA claims on these grounds.

The National DNC claim (Count I) must be dismissed because Plaintiff failed to sufficiently allege the calls were "telephone solicitations," which the TCPA defines as calls made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or

---

[2] Storm Leads has not appeared in the action, and there is no indication in the docket that it has been served.

services . . ."  Her boilerplate allegations that the callers "solicited" her to avail of services are not only conclusory, they are inconsistent with her other allegations which show she consented to and invited further calls.  Indeed, rather than ask for the calls to stop, Plaintiff agreed to schedule roof inspection appointments with the callers.  Courts have dismissed similar claims because such acquiescence to calls gives rise to "prior express consent" and/or an "established business relationship," which further exempts calls from the definition of "telephone solicitation" under the TCPA.  The National DNC claim must also be dismissed because Plaintiff does not allege that she personally registered her phone numbers with the National Do-Not-Call Registry ("NDNCR").

The Internal DNC claim (Count III) alleges HomeOver made telemarketing calls to persons who have asked to be added to HomeOver's internal do-not-call list.  However, Plaintiff does not identify any regulation under Section 227(c) that she believes provides the basis for this claim.  In addition, her Internal DNC claims based on alleged calls to her landline fail because she does <u>not</u> allege she requested her landline to be added to any internal do-not-call list.

The Caller ID claims (Count II) must also be dismissed because the regulation upon which Plaintiff relies—47 C.F.R. § 64.1601(e)—does not afford a private right of action.  Even if it did, the regulation applies only to "telemarketing" calls, which has a similar definition as "telephone solicitation" under the TCPA.  Plaintiff has failed to sufficiently allege this element.

Plaintiff's claim under the Texas Business Commercial Code ("TBCC") § 302.101 (Count IV) fails because Texas' registration requirement applies only to "telephone solicitations" as defined by that statute, which has a definition similar to the TCPA.  The claim also fails because there are no facts showing Plaintiff was in Texas at the time of the alleged calls, or that the calls were made from Texas, as required to state a claim under the statute.

Finally, the TCPA does not authorize the recovery of attorney's fees, and the injunction requested in the Complaint is overbroad, because it seeks to enjoin indisputably lawful conduct. Accordingly, these prayers for relief should also be dismissed.

## II.    ALLEGATIONS OF THE COMPLAINT

### A.    The Alleged Calls to Plaintiff

Plaintiff alleges her cellphone and landline numbers have been "listed on the Do Not Call Registry for years prior to the calls at issue." Dkt. 1, ¶ 24.  In addition, sometime in March or April 2021, she allegedly asked HomeOver to "place her cellular telephone number on Defendant HomeOver's internal Do Not Call list." *Id*., ¶ 25.  She does not allege she made a similar request regarding her landline.

Plaintiff says Storm Leads—not HomeOver—continued to place calls to her cellphone and landline despite those numbers being registered on the NDNCR.  *Id*., ¶¶ 3, 26.  She allegedly received four calls on her cellphone on November 16, 2021, November 17, 2021, February 10, 2022, and March 10, 2022, and one call on her landline on January 3, 2022.  *Id*., ¶¶ 27-28, 31-33.

In each of these calls, the callers allegedly "identified themselves as "from HomeOver" and "solicited" Plaintiff to schedule roof inspections and related services.  *Id*.  Except for the March 10th call, Plaintiff does <u>not</u> allege she requested the callers to stop calling her.  *Id*.  To the contrary, during the November 16th, January 3rd, and February 10th calls, Plaintiff allegedly agreed to schedule appointments for roof inspections.  *Id*., ¶¶ 27, 31-32.  Plaintiff indicated to a caller who sought "to confirm the appointment" that she "would call back to reschedule." *Id*., ¶ 28.  Then, on March 10, 2022, in response to another call to her cellphone, Plaintiff allegedly "requested to be

added to the caller's do-not-call list." *Id.*, ¶ 33. Plaintiff does not allege any further calls associated with HomeOver after that date.[3]

### B.    HomeOver's Alleged Relationship with Defendant Storm Leads

Plaintiff alleges that "Storm Leads is a lead generator who was hired by HomeOver to sell leads to HomeOver using HomeOver's own brand name." *Id.*, ¶ 42. HomeOver allegedly hired Storm Leads "to contact potential new leads and customers *en masse* and only sell them the purportedly interested ones." *Id.*, ¶ 45. She alleges in a conclusory manner that HomeOver "authorized, ratified, and failed to supervise these calls after receiving actual notice of Plaintiff's complaints and do not call requests in 2021." *Id.*, ¶ 36.

Importantly, however, Plaintiff does <u>not</u> allege HomeOver had the right to control any aspect of Storm Leads' calling practices. She does not allege, for example, that HomeOver instructed Storm Leads about who to contact, or that HomeOver provided Plaintiff's phone numbers to Storm Leads. *See id.*, ¶¶ 41 – 45, 53 – 58.

Nor does the Complaint allege any facts which, if proven true, would establish that HomeOver directed or authorized Storm Leads agents to call phone numbers registered on the NDNCR, or to call persons who previously requested not to be called. Likewise, there are no allegations that HomeOver was aware Storm Leads agents were allegedly engaged in such calling practices. Plaintiff alleges only that after she complained to HomeOver owner Josh Nelson about the "illegal calls," Mr. Nelson allegedly "provided contact information for the marketer

---

[3] Although Plaintiff alleges two additional calls to her landline in June 2022 from callers who allegedly went by "TM Roofing," there are no facts connecting these calls to HomeOver. *Id.*, ¶¶ 34-35.

responsible for the calls—'Jack' with Defendant Storm Leads Innovation . . ." *Id.*, ¶¶ 28 – 29. She does not allege any specific statements made by Mr. Nelson or anyone else from HomeOver.

### C.    Plaintiff's Claims

The Complaint asserts four causes of action. In Count I, Plaintiff alleges Defendants violated 47 C.F.R. § 64.1200(c)(2) by "causing multiple telephone solicitation calls to be initiated to Plaintiff and [putative class members]" who had registered their numbers on the NDNCR. *Id.*, ¶¶ 76 – 81. In Count II, Plaintiff alleges Defendants violated 47 C.F.R. § 64.1601(e)(1) by "causing . . . telemarketing calls to be initiated . . . without proving[*sic*] a CPN or ANI that allowed any individual to make a do-not-call request . . . and without the provision of accurate caller ID name." *Id.*, ¶¶ 82 – 88. In Count III, Plaintiff alleges Defendants violated the TCPA "by sending telemarketing calls . . . to Plaintiff and [putative class members] despite previously requesting that such calls stop." *Id.*, ¶¶ 89 – 92. In Count IV, Plaintiff alleges Defendants violated TBCC § 302.101 by making "telephone solicitations" without a registration certificate as required under Texas law. *Id.*, ¶¶ 93 – 96.

Among other things, Plaintiff seeks statutory damages, attorneys' fees, and an injunction "preventing the Defendants from making calls to numbers listed on the [NDNCR], to those who have asked them to stop, or while failing to transmit the caller ID information required by law." *Id.*, Prayer for Relief.

## III.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To "state a claim" for relief, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), the Supreme Court expressly rejected the "no set of facts" test that had been articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Twombly*, 550 U.S. at 562-63. The Court held that although "detailed factual allegations" are not required at the pleading stage, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. There must be sufficient facts pled to state a claim to relief that is "plausible on its face." *Id*. at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Thus, when evaluating a motion to dismiss, courts must identify and then ignore the legal conclusions, because they "are not entitled to the assumption of truth." *Id*. at 679. With respect to any "well-pleaded factual allegations" in the complaint "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. To survive a Rule 12(b)(6) motion, "the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (citations omitted).

IV.    <u>**ARGUMENT**</u>

A.    <u>**The Complaint Does Not Sufficiently Allege That HomeOver is Vicariously Liable For The Alleged Calls to Plaintiff**</u>

The Complaint does not contain any facts which, if true, would establish that HomeOver is vicariously liable for the alleged calls under any theory of agency.  Accordingly, all of Plaintiff's claims against HomeOver must be dismissed.[4]

1.    **Vicarious Liability Under The TCPA**

To establish vicarious liability under the TCPA, a plaintiff must plead and prove "an agency relationship . . . between the defendant and a third-party caller."  *Hunsinger v. Dynata LLC*, 2023 U.S. Dist. LEXIS 37879, at \*12 (N.D. Tex. Feb. 7, 2023).  "[A]n agency relationship can be shown by demonstrating (1) ***actual authority*** where the principal assigns "the agent's task and controls the means and details of the process by which the agent will accomplish that task," (2) ***apparent authority***, which holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal or (3) ***ratification***, where a principal may be liable if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances."  *Heller v. Marriott Vacations Worldwide Corp*., 2023 U.S. Dist. LEXIS 183421, at \*\*11-12 (W.D. Tex. Oct. 11, 2023) (emphasis added).

2.    **There Are No Facts Showing Actual Authority**

The Complaint does not include facts that, if proven true, would establish vicarious liability under an actual authority theory.  There are no allegations indicating HomeOver had the right to

---

[4] Plaintiff does not allege HomeOver initiated any of the calls; rather, she alleges that the calls "were placed by Storm Leads."  Dkt. 1, ¶ 3.  Thus, Plaintiff has not alleged HomeOver is directly liable for the calls and her claims against HomeOver hinge upon vicarious liability.  *See Cunningham v. Lifestyles Dev., LLC*, 2019 U.S. Dist. LEXIS 154112, at \*8 (E.D. Tex. Aug. 8, 2019).

control the calling practices of the Storm Leads agents who called Plaintiff, or that HomeOver authorized or directed its agents to make calls that allegedly violate the TCPA.

For TCPA cases, the relevant inquiry is "whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign." *Heller*, 2023 U.S. Dist. LEXIS 183421 at *5; *see also Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass*., 2025 U.S. Dist. LEXIS 76839, at *12 (W.D. Tex. Apr. 15, 2025) (same).

The Complaint does not allege a single fact suggesting HomeOver had the right to control any aspect of Storm Leads' calling practices, including who to contact or whether to contact phone numbers registered on the NDNCR. *See e.g.*, *Callier v. Wide Merch. Inv., Inc*., 671 F.Supp.3d 736, 744-45 (W.D. Tex. Apr. 27, 2023) ("*Wide Merch*") (no agency relationship where defendants "had no control over Synergy's marketing campaign, how Synergy obtained leads, and what Synergy said during calls"); *Callier v. Sunpath Ltd*., 2020 U.S. Dist. LEXIS 256792, at *8 (W.D. Tex. Aug. 10, 2020) ("*Sunpath*") (same); *Heller*, 2023 U.S. Dist. LEXIS 183421, at **18-19 (same); *Callier v. Optimum Solar USA*, 2024 U.S. Dist. LEXIS 51467, at **11-12 (W.D. Tex. Mar. 21, 2024) ("*Optimum Solar*") (same).  Plaintiff's allegation that HomeOver hired Storm Leads to contact potential customers as part of a telemarketing campaign is insufficient to show an agency relationship under a theory of actual authority.  *See Sunpath*, 2020 U.S. Dist. LEXIS 256792, at *8 ("[T]his court cannot reasonably infer an agency relationship from the mere fact that telemarketing calls were made on behalf of [defendants]").

Control is the key.  Indeed, courts routinely dismiss vicarious liability claims based on calls initiated by third-party telemarketers absent factual allegations showing defendant had control over the telemarketers' calling practices.  *See, e.g*., *Hunsinger v. Dynata LLC*, 2023 U.S. Dist. LEXIS 37879, at **12-14 (N.D. Tex. Feb. 7, 2023) (allegation that defendant "has an agreement with the

caller" was "wholly conclusory," and "sheer possibility that a third party [initiated a call] on [defendant's] behalf" is insufficient to establish an agency relationship"); *Gonzalez*, 2025 U.S. Dist. LEXIS 76839, at *14 ("Although Plaintiff does allege SBLI had contractual relationship with Rawlings, who allegedly hired the American Benefits telemarketer, Plaintiff does not allege sufficient facts to establish SBLI had control over Rawlings' day-to-day marketing practices, or his phone call practices, nor that Rawlings had such control over the American Benefits telemarketer").  The same result follows here.

### 3.    There Are No Facts Showing Apparent Authority

Nor does the Complaint contain any facts which, if proven true, would establish HomeOver is vicariously liable under an apparent authority theory.  Apparent authority may exist where "the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority."  *Heller*, 2023 U.S. Dist. LEXIS 183421 at *19.  "[A]pparent authority must be traceable to the conduct of the principal"—in this case to [HomeOver's] conduct.  *Id.*; *Wide Merch*, 671 F. Supp. 3d 736, 745-46 (same).

There are no allegations that HomeOver held Storm Leads out as possessing authority to make calls to Plaintiff on HomeOver's behalf.  The fact that the Storm Leads callers allegedly indicated they were "calling from [HomeOver]" is wholly insufficient.  *See Sunpath*, 2020 U.S. Dist. LEXIS 256792, at *9 ("While it may be reasonable to believe a telemarketer soliciting business on behalf of an entity is acting as an agent, the belief must be traceable to the conduct of the principal . . . ").  Plaintiff does not allege that *HomeOver* (as opposed to the callers) did anything that led her to reasonably believe the callers were HomeOver's agents.  Although she alleges that HomeOver's owner Josh Nelson "provided contact information" for Storm Leads, she does not explain how this reasonably led her to believe Storm Leads was authorized to place calls on HomeOver's behalf.  Accordingly, Plaintiff has failed to allege an agency relationship based on a

theory of apparent authority.  *See Gonzalez*, 2025 U.S. Dist. LEXIS 76839, at *16 ("Plaintiff does not allege facts surrounding [defendant's] conduct . . . that reasonably led her to believe Rawlings was [defendant's] agent. Accordingly, Plaintiff did not plausibly allege Rawlings . . . acted with apparent authority").

### 4.    There Are No Facts Showing Ratification

The Complaint is also completely devoid of any facts which, if proven true, would establish ratification by HomeOver.  Ratification is the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  *Heller*, 2023 U.S. Dist. LEXIS 183421 at *20.  To establish vicarious liability under a theory of ratification, Plaintiff must show HomeOver was "retain[ed] the benefits of a transaction after acquiring full knowledge of the underlying circumstances."  *Sunpath*, 2020 U.S. Dist. LEXIS 256792, at *8.

The Complaint does not contain sufficient facts showing HomeOver had "full knowledge of the underlying circumstances" surrounding the alleged calls such that it can be deemed to have ratified Storm Leads agents' conduct.  She does not allege  HomeOver knew either of her phone numbers, knew that those numbers were allegedly listed on the NDNCR prior to the alleged calls, knew that she had allegedly previously asked the calls to stop, or knew the callers allegedly failed to provide caller identification information required under the TCPA.  Without knowledge of these basic "facts," HomeOver cannot be said to have ratified or affirmed the callers' conduct.  Plaintiff's allegation that she emailed HomeOver owner Josh Nelson regarding "illegal calls" is too vague and conclusory to reasonably infer HomeOver had the requisite knowledge that would give rise to an agency relationship.  The ratification theory fails.  *See Gonzalez*, 2025 U.S. Dist. LEXIS 76839, at *17 (dismissing TCPA claims; no agency based on ratification theory where plaintiff failed to allege defendant knew of telemarketer's alleged unlawful calls); *Sunpath*, 2020 U.S. Dist. LEXIS 256792, at *9 ("Although [defendants] undoubtedly benefited from the marketing calls, nothing

in the pleadings indicates either were aware of the actions allegedly in violation of the TCPA" which "is necessary to meet the standard for ratification . . .").

**B.**    **The DNC Provisions Do Not Apply To Cellphones**

Counts I and III of the Complaint allege HomeOver violated the DNC provisions based on Storm Leads' calls to her cellphone and landline.  Dkt. 1, ¶¶ 27-36.  Even assuming the truth of Plaintiff's allegations, however, she is not entitled to any relief based on alleged calls to her cellphone because the DNC provisions apply only to "residential telephone subscribers" and not to cellphone users.  *See* 47 U.S.C. § 227(c).  Thus, to the extent Counts I and III are based on alleged calls to Plaintiff's cellphone, those claims must be dismissed <u>with</u> prejudice.

Under section 227(c) of the TCPA, Congress authorized the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect ***residential telephone subscribers'*** privacy rights . . ." 47 U.S.C. § 227(c)(1) (emphasis added). Section 227(c)(3) further authorized the FCC to establish the NDNCR, in other words, "to compile a list of telephone numbers of ***residential subscribers*** who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added).

Consistent with this authority, the FCC adopted 47 C.F.R. § 64.1200(c)(2) which prohibits "telephone solicitations" to "***residential telephone subscriber[s]***" registered on the NDNCR.  *Id.* (emphasis added).  Based on their plain language, these provisions apply only to "residential telephone subscribers."  Thus, Plaintiff cannot state a claim for relief under these provisions based on alleged calls to her cellphone.  *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then [] judicial inquiry is complete").

It makes no difference that Plaintiff allegedly uses her cellphone for "personal, residential, and household reasons."  Dkt. 1, ¶ 21.  Again, the DNC provisions apply only to "residential telephone subscribers" and <u>not</u> to cellular telephone subscribers or users.  Congress knew the difference between a "cellular" phone and a "residential" phone when the statute was passed in 1991.  Indeed, calls to cellphones are addressed in a different section of the TCPA separate from the DNC provisions.  *See* 47 U.S.C. § 227(b)(1)(a)(iii) (restricting autodialed calls to phone numbers "assigned to a [] *cellular* telephone service . . .") (emphasis added); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) ("The [TCPA] separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones . . .").  After using the word "cellular" in Section 227(b) of the TCPA, Congress then omitted that language from Section 227(c), reflecting a clear intent that the DNC provisions would apply only to residential phones, not cellphones.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").[5]

---

[5] To the extent Plaintiff relies upon the FCC's regulation found at 47 C.F.R. § 64.1200(e), which states that the DNC provisions apply to "calls or text messages to wireless telephone numbers," that regulation is invalid because it exceeds the authority granted to the FCC by Congress to devise rules specifically and exclusively intended for the protection of "residential telephone subscribers' privacy rights."  *See* 47 U.S.C. § 227(c); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law," but rather the power "to carry into effect the will of Congress as expressed by the statute").  Thus, the Court is not bound by 47 C.F.R. § 64.1200(e).  *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025).

Many courts from this Circuit have dismissed similar claims on the grounds the DNC provisions do <u>not</u> apply to calls to cellphones (notwithstanding the FCC's contrary interpretation). *See, e.g.*, *Callier v. Greensky, Inc.*, 2021 U.S. Dist. LEXIS 126769, at *14 (W.D. Tex. May 10, 2021) (dismissing TCPA claim under 47 C.F.R. § 64.1200; "[T]he Court is not aware of—any authority that has found § 64.1200(d)(l) applicable to cellphones"); *Cunningham v. Britereal Mgmt.*, 2020 U.S. Dist. LEXIS 236135, at **15-16 (E.D. Tex. Nov. 20, 2020) ("[T]elemarketing calls made to cell phones do not fall under TCPA 227(c)(5)'s purview"); *Cunningham v. Air Voice, Inc.*, 2020 U.S. Dist. LEXIS 51585, at *15 (E.D. Tex. Feb. 14, 2020) (same); *Johnson v. Palmer Admin. Servs., Inc.*, 2022 U.S. Dist. LEXIS 207008, at *22 (E.D. Tex. Oct. 20, 2022) (same); *Strange v. Doe #1*, 2020 U.S. Dist. LEXIS 84761, at *8 (W.D. La. May 12, 2020) (same). The same result follows for Plaintiff's National DNC (Count I) and Internal DNC (Count III) claims based on alleged calls to her cellphone.

### C.   The National DNC Claim Fails Because There Are No Facts Showing That The Alleged Calls Were "Telephone Solicitations" And That Plaintiff Personally Registered Her Phone Numbers With The NDNCR

Plaintiff's National DNC claim (Count I) fails for additional reasons because Plaintiff failed to allege sufficient facts to show that: a) the alleged calls were "telephone solicitations" within the meaning of the TCPA, and b) that she personally registered her phone numbers with the NDNCR.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### 1.   Plaintiff Failed to Sufficiently Allege A "Telephone Solicitation"

To prevail on her National DNC claim, Plaintiff must allege she received "more than one" "telephone solicitation" within a twelve-month period.  47 U.S.C. §227(c)(5); 47 C.F.R. § 64.1200(c)(2).  Under the TCPA, a call is not a "telephone solicitation" unless it was initiated "for

the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). Here, Plaintiff has not alleged any specific statements about what was said to her during the alleged calls from which it can be reasonably inferred that the alleged calls were made for this purpose. In fact, the only reasonable inference from Plaintiff's allegations is that the calls were made at her request and to assist Plaintiff—who repeatedly agreed to schedule roof inspections—with completing those appointments, rather than to "solicit" a transaction. *See* Dkt. 1, ¶¶ 27, 31 – 33; *see also Aderhold v. car2go N.A. LLC*, 668 Fed.Appx. 795, 796 (9th Cir. 2016) (a text message regarding registration completion was not "telemarketing" under the TCPA because the message contained "no content encouraging purchase of [the defendant's] services" and was "directed instead to completing the registration process"). Her conclusory allegations that the callers "solicited" "roof inspection[s]" or similar services are insufficient to state a claim. *See* Dkt. 1, ¶¶ 27, 31 – 33; *see also Hunsinger*, 2023 U.S. Dist. LEXIS 37879, at *19 ("[Plaintiff's] bald allegations that [Defendant] engages in 'commercial telemarketing calls' does nothing more than use conclusory language to attempt to state a claim").

Moreover, by agreeing to schedule appointments in response to the calls, Plaintiff gave her "prior express invitation or permission" to receive further calls, and/or entered into an "established business relationship" which allowed the callers to place further calls "in furtherance of that business relationship."[6] *Morris v. Copart*, 2016 U.S. Dist. LEXIS 155755, at **28-33 (E.D. Tex.

---

[6] An "established business relationship" under the TCPA "means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. §64.1200(f)(5).

Nov. 9, 2016) (allegation that Plaintiff represented he had a vehicle to donate in response to calls from "Donate That Car" resulted in "consent" and an "established business relationship" which "excus[ed] subsequent calls" relating to that relationship"); *see also Optimum Solar*, 2024 U.S. Dist. LEXIS 51467, at **19-20 (W.D. Tex. Mar. 21, 2024) ("[T]he Court finds that Plaintiff setting an appointment with the telemarketer constitutes an invitation for a telephone solicitation from Defendant Guzman"); *Hamilton v. Spurling*, 2013 U.S. Dist. LEXIS 38585, at **33-34 (S.D. Ohio Mar. 20, 2013) (Plaintiff's agreement to set up an appointment during the first call created an "established business relationship" with defendant, and subsequent calls regarding the appointment were not "telephone solicitations").   Thus, even assuming the first call Plaintiff received counts as a TCPA violation (it does not), the subsequent calls do not.  *See* 47 C.F.R. § 64.1200(f)(15) (calls made pursuant to "prior express invitation" and "established business relationship" are not "telephone solicitations").  Because Plaintiff has failed to allege "more than one" "telephone solicitation," her claims must be dismissed.[7]  *See* 47 U.S.C. §227(c)(5) (requiring "more than one" TCPA violation within a twelve-month period).

### 2. Plaintiff Does Not Allege That She Personally Registered Her Phone Numbers With The NDNCR

47 C.F.R. § 64.1200(c)(2) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]"  Thus, the plain, unambiguous language of the regulation indicates that it applies only to a "residential telephone subscriber" who personally registered his or her phone number with the

---

[7] To the extent the National DNC claims are based on alleged calls to Plaintiff's landline, those claims must be dismissed because Plaintiff alleges only <u>one</u> call to her landline associated with HomeOver.  *See* Dkt. 1, ¶ 31. Although she allegedly received two additional calls to her landline in June 2022, there are no facts connecting those calls to HomeOver.  *Id*., ¶¶ 34 – 35 (alleging the caller identified as "TM Roofing").

NDNCR, and not to persons whose telephone numbers may have been registered by others. Here, Plaintiff does not allege that she personally registered the phone numbers at issue with the NDNCR, or even that they were registered on her behalf. *See* Dkt. 1, ¶ 24 (alleging only that Plaintiff's phone numbers "were listed on the Do Not Call Registry for years prior to the calls at issue"). Thus, her National DNC claims must be dismissed. *See e.g., Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 U.S. Dist. LEXIS 124614, at **6-7 (N.D. Iowa Jun. 9, 2022) (dismissing claim under section 64.1200(c) because plaintiff failed to allege she personally registered her number on the NDNCR); *Rogers v. Assur. IQ, LLC*, 2023 U.S. Dist. LEXIS 51955, at *12 (W.D. Wash. Mar. 27, 2023) (same).

### D. The Internal DNC Claim Fails Because Plaintiff Failed To Identify An Underlying Regulation Under Section 227(c) That HomeOver Allegedly Violated And She Does Not Allege That She Asked Her Landline To Be Added To HomeOver's Internal Do-Not-Call List

Like the National DNC claim, the Internal DNC (Count III) claim is brought pursuant to 47 U.S.C. §227(c)(5), which requires Plaintiff to allege "more than one" call within a twelve-month period in violation of a "regulation[] prescribed [under Section 227(c)]." *Id*. Plaintiff alleges HomeOver violated the TCPA by "sending telemarketing calls . . . to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop." Dkt. 1, ¶ 90. Her Internal DNC claims must be dismissed, however, because she does not identify any regulation under Section 227(c) to support her claims. *Id*., ¶¶ 89 – 92.

Plaintiff's Internal DNC claims based on alleged calls to her landline are even more deficient. She does not allege that she requested her landline to be added to HomeOver's internal do-not-call list. *See* Dkt. 1, ¶ 25 (alleging Plaintiff requested Defendants to "place her *cellular telephone number* on Defendant HomeOver's internal Do Not Call list") (emphasis added); *see also Cunningham v. Mark D. Guidubaldi and Assocs., LLC*, 2019 U.S. Dist. LEXIS 38652, at

**28-29 (E.D. Tex. Jan. 11, 2019) (dismissing Section 227(c) claims based on plaintiff's failure to allege any affirmative request not to receive calls).  Accordingly, Plaintiff has not stated an Internal DNC claim based on calls to her landline either.

E.    **The Caller ID Claim Fails Because There Is No Private Right Of Action To Enforce 47 C.F.R. §64.1601(e) And Plaintiff Failed to Sufficiently Allege That The Calls Constituted "Telemarketing"**

Plaintiff alleges that HomeOver violated 47 C.F.R. § 64.1601(e)(1) by making "telemarketing calls" without providing the requisite caller identification information.  However, Plaintiff's Caller ID claim must be dismissed because 47 C.F.R. § 64.1601(e)(1) does not confer a private right of action.  *See e.g.*, *Worsham v. Travel Options*, 2016 U.S. Dist. LEXIS 118774, at *19 (D. Md. Sep. 1, 2016); *Dobronski v. Selectquote Ins. Servs*., 462 F.Supp.3d 784, 789-90 (E.D. Mich. May 26, 2020); *Dobronski v. Total Ins. Brokers, LLC*, 2021 U.S. Dist. LEXIS 186528, at *at 3 (E.D. Mich. Sep. 29, 2021); *Dobronski v. Tobias & Assocs., Inc*., 2024 U.S. Dist. LEXIS 47309, at **10-12 (E.D. Mich. Mar. 18, 2024); *Meyer v. Capital Alliance Group*, 2017 U.S. Dist. LEXIS 183690, at **44-47 (S.D. Cal. Nov. 6, 2017); *Griffin v. American-Amicable Life Ins. Co. of Texas*, 2024 U.S. Dist. LEXIS 175344, at *15 (D. Or. Sep. 27, 2024).[8]

Even assuming 47 C.F.R. § 64.1601(e) confers a private right of action (it does not), the claim fails because Plaintiff failed to sufficiently allege the calls constituted "telemarketing."  *Id*. ("Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information").  Like the definition for "telephone solicitation," a "telemarketing" call is a call initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 C.F.R. § 64.1200(f)(1); *Compare* 47 C.F.R. §

---

[8] Defendant is unaware of any court within this Circuit that has addressed the issue of whether 47 C.F.R. §64.1601(e) confers a private right of action.

64.1200(f)(15) (defining "telephone solicitation"). As stated, Plaintiff has not sufficiently alleged this element, and thus her Caller ID claim fails.

### F.    Plaintiff's Claim Under The TBCC § 302.101 Fails Because There Are No Facts Showing That The Texas Registration Requirement Applied To The Alleged Calls

The registration requirement under TBCC § 302.101 applies only to "telephone solicitation[s] [made] from a location in [Texas] or to a purchaser located in [Texas]." TBCC § 302.101. Texas defines "telephone solicitation" as a "telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id*. § 302.101(7). Because this definition is "nearly identical" to the TCPA definition, Plaintiff has failed to allege a "telephone solicitation" in support of her state law claim for the same reasons as her TCPA claims. *Dukes v. DirectTV LLC*, 2016 U.S. Dist. LEXIS 153948, at **8-9 (N.D. Tex. Nov. 7, 2016) ("It logically follows that the same reasoning for dismissal under the federal TCPA claim must apply to the Texas TCPA claim as well").

This claim also fails because the Complaint is devoid of any allegation showing Plaintiff was "located in [Texas]" at the time of the alleged call or that the calls were made "from a location in [Texas]," as required to state a claim under TBCC § 302.101. TBCC § 302.101. Indeed, Plaintiff does not even allege that she is a Texas resident. Because Plaintiff failed to allege these elements, she has not shown the registration requirement applies to HomeOver, and thus her claim must be dismissed.

### G.    The Request For Attorney's Fees Must Be Dismissed Because The TCPA Does Not Authorize The Recovery Of Fees

Plaintiff's request for attorney's fees (Dkt. 1, Prayer ¶ G) fails because the TCPA does not authorize a prevailing plaintiff to recover fees. *See, e.g.,* 47 U.S.C. § 227; *Whatley v. Creditwatch Servs.*, 2014 U.S. Dist. LEXIS 42990, at *24 (E.D. Tex. Mar. 31, 2014) ("Attorneys' fees are not

recoverable under the Telephone Consumer Protection Act even though Plaintiff prevailed on those claims"); *Lemos v. Credit One Bank, N.A.,* 807 Fed. Appx. 698, 698-699 (9th Cir. 2020) ("the TCPA does not allow an award of [attorney's] fees.") (citing *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 158 (2016)).   Accordingly, the request for attorney's fees must be dismissed.[9]

### H.    The Request For Injunctive Relief Must Be Dismissed Because It Is Overbroad

Plaintiff seeks an injunction "preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry, to those who have asked them to stop, or while failing to transmit the caller ID information required by law."   Dkt. 1, Prayer ¶ F.   This prayer for injunctive relief is grossly overbroad and must therefore be dismissed.[10]

"[T]he scope of injunctive relief . . . must [be] narrowly tailor[ed] . . .  to remedy the specific action which gives rise to the order" and must not be "overbroad or vague."   *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) ("*Veneman*").

The "specific action" alleged by Plaintiff is that Storm Leads agents "ma[de] telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, [made] telemarketing calls without the accurate provision of Caller ID Name (CNAM), [and] call[ed] people who had previously asked to no longer receive calls."   Dkt. 1, ¶  3.   An injunction prohibiting "calls" (*id.*, Prayer ¶ F) is not "narrowly tailored [] to remedy the specific action" alleged.   *Veneman*, 380 F.3d at 818.   Indeed, the TCPA's DNC provisions apply only to "telephone solicitations" and "telemarketing" calls, which are specifically defined under the TCPA, as opposed to "calls" generally.   *See* 47 C.F.R. §§64.1200(c)-(d).

---

[9] A motion to dismiss is the proper procedural mechanism to challenge an improper request for attorney's fees.  *See Dongbu USA, Inc. v. Partners in Steel Int'l, LLC,* 2015 U.S. Dist. LEXIS 188029, at **3-4 (S.D. Tex. July 17, 2015).

[10] The request also makes no sense because HomeOver is not alleged to have made any of the calls.

Moreover, there is nothing illegal about calling phone numbers registered on the NDNCR, as long as it is done in accordance with applicable laws.  The Court should not enjoin conduct that is indisputably lawful.

Finally, the injunctive relief fails because Plaintiff has not alleged and apparently cannot allege that she has received any calls in over two and a half years.  There are no facts which, if proven true, would suggest that Plaintiff is at risk of being called again by HomeOver. The requested injunction must be dismissed.

## V.    CONCLUSION

For the reasons stated herein, HomeOver respectfully requests that the Court issue an Order dismissing Plaintiff's claims against HomeOver with prejudice.


**Dated**: November 4, 2025

                              Respectfully Submitted,

                              **WOMBLE BOND DICKINSON (US) LLP**

                              By:    */s/ R. Kyle Hawes*
                                       R. Kyle Hawes
                                       State Bar No. 00796725
                                       717 Texas Avenue, Suite 2100
                                       Houston, Texas 77002
                                       Telephone: (346) 998-7821
                                       Facsimile: (346) 998-5901
                                       Email: kyle.hawes@wbd-us.com

                              **ATTORNEYS FOR DEFENDANT**
                              **HOMEOVER GENERAL**
                              **CONTRACTORS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that a true and correct copy of the foregoing document has been forwarded to all known counsel in this cause in accordance with the Federal Rules of Civil Procedure on this 4th day of November 2025.

*/s/ R. Kyle Hawes*         
R. Kyle Hawes
