# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| KIMBERLY STARLING, individually and on behalf of all others similarly situated, | Case No. 4:25-cv-00993 |
| Plaintiff, <br><br> v. <br><br> HOMEOVER GENERAL CONTRACTORS, LLC AND "STORM LEADS INNOVATION" <br><br> Defendants. | **JURY TRIAL DEMANDED** |

## RESPONSE IN OPPOSITION TO DEFENDANT HOMEOVER GENERAL CONTRACTORS' MOTION TO DISMISS

## Table of Contents

STATEMENT OF ISSUES ....................................................................................- 1 -

INTRODUCTION ...............................................................................................- 1 -

LEGAL STANDARD............................................................................................- 1 -

FACTS .............................................................................................................- 2 -

ARGUMENT .....................................................................................................- 4 -

    A.   Plaintiff adequately pleads direct or at least vicarious liability ..................- 4 -

        *1.   Plaintiff's factual allegations are adequate for a finding of direct or vicarious liability.* ..........................................................................................- 6 -

        *2.   Storm Leads acted with HomeOver's actual authority.*.........................- 9 -

        *3.   Storm Leads acted with HomeOver's apparent authority.* ...................- 12 -

        *4.   Storm Leads Ratified HomeOver's Conduct* ......................................- 13 -

        *5.   Ms. Starling maintains a direct liability theory.* .................................- 15 -

    B.   The TPCA applies to and protects Plaintiff's "residential" cell phone line. ............- 16 -

    C.   The calls were solicitations. There is no personal registration requirement under the TCPA. .........................................................................................- 19 -

        *1.   The calls were made to solicit Defendant's roofing services, and thus were solicitations.* ......................................................................................- 19 -

        *2.   There is no "personal registration" requirement under the TCPA.* ......- 23 -

    D.   The internal do not call claim is actionable as to Plaintiff's cell phone. .................- 24 -

    E.   There exists a private right of action for the caller ID regulations. .........................- 24 -

    F.   The Texas state law claims apply. .......................................................- 27 -

    G.   Plaintiff's counsel are entitled to attorneys' fees if this putative class is certified. ..- 28 -

    H.   The injunctive relief claims should not be struck ...................................- 28 -

CONCLUSION................................................................................................- 30 -

## Table of Authorities

**Cases**

*Abrahamian v. loanDepot.com LLC,* 2024 U.S. Dist. LEXIS 44009, *5-6 (D. Ariz. March 13, 2024) .......................................................................................- 23 -

*Abramson v. AP Gas & Elec. (PA), LLC,* No. CV 22-1299, 2023 WL 1782728, at *5 (W.D. Pa. Feb. 6, 2023) ...................................................................................- 30 -

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ..............................................................- 2 -

*Atkinson v. Choice Home Warranty,* No. CV 22-04464, 2023 WL 166168, at *7 (D.N.J. Jan. 11, 2023) .......................................................................................- 30 -

*Banks v. Pro Custom Solar,* 416 F. Supp. 3d 171 (E.D.N.Y. 2018)........................................- 12 -

*Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) .................................................................................................- 25 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................- 2 -

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).............................................................- 28 -

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) .......................................- 26 -

*Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 331 (D. Md. 2022).................................- 11 -

*Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356 (E.D. Pa. 2017) ............- 28 -

*Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024)......- 16 -, - 17 -

*Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022) .............................................................................- 23 -

*Callier v. Optimum Solar USA*, No. EP-23-CV-00273-KC-MAT, 2024 WL 2044832, at *5 (W.D. Tex. Mar. 21, 2024). ...................................................................... - 11 -, - 19 -

*Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659 (W.D. Tex. Aug. 10, 2020) ...................................................................................................................- 13 -

*Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *6 (W.D. Tex. July 15, 2024)..........................................................................................................- 19 -

*Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736 (W.D. Tex. 2023)............................- 11 -

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ....................................- 5 -, - 7 -

*Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e)- 16 -

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) .....................................- 20 -

*Cranor v. 5 Star Nutrition, L.L.C.,*. 998 F.3d 686, 689 (5th Cir. 2021). ..................................- 18 -

*Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018).........................................................................................- 6 -

*Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370 (W.D. Tex. May 23, 2024)..............................................................................................- 7 -

*Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773 (W.D. Tex. May 23, 2024), *report and recommendation adopted*, No. SA-22-CV-00363-OLG, 2024 WL 3100279 (W.D. Tex. June 18, 2024) ........................................... - 7 -, - 12 -, - 23 -

*Davis v. FEC*, 554 U.S. 724, 734 (2008) ..........................................................................- 29 -

*Davis v. Rockloans Marketplace, LLC*, No. 23cv0134, 2024 U.S. Dist. LEXIS 215499 (S.D. Cal. Nov. 26, 2024) ...........................................................................................................- 8 -

*Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)....................- 25 -

*Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025)..................................................................................................- 25 -

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025)...............- 24 -

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016).........................- 6 -, - 10 -

*Doyle v. GoHealth, LLC*, No. 22-04291, 2023 U.S. Dist. LEXIS 241083, at *7 (D.N.J. Dec. 7, 2023) ...................................................................................................................- 13 -

*Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015) .............................................- 20 -

*Gonzalez v. Burger L., LLC*, No. 4:23-CV-1094, 2024 U.S. Dist. LEXIS 41018, at *9 (E.D. Mo. Mar. 8, 2024)............................................................................................................- 14 -

*Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. EP-24-CV-00289-DB, 2025 WL 1145266 (W.D. Tex. Apr. 15, 2025)..............................................................- 10 -

*Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016)..........................- 28 -

iii

*Guadian v. Debtblue LLC*, No. EP-23-CV-329-KC, 2024 U.S. Dist. LEXIS 70167, at *8 (W.D. Tex. Apr. 16, 2024)......................................................................................................- 15 -

*Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410 (S.D. Fla. 2019). ..................- 30 -

*Heller v. Marriott Vacations Worldwide Corp.*, No. EP22CV00398FMMAT, 2023 WL 6702696, at *6 (W.D. Tex. Oct. 11, 2023) ..............................................................................- 11 -

*Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). ....... - 17 -, - 18 -

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024)..........................................................................................................- 17 -

*John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) ........................................................................................................- 10 -

*Johnson v. Palmer Admin. Servs., Inc.*, No. 622CV00121JCBKNM, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022)...................................................................................- 18 -

*Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052 (D. Colo. 2023) .......................................- 6 -

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023) .......................................................................................................- 24 -

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016)- 5 -

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .................................. - 5 -, - 11 -

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ..............................- 8 -

*Landy v. Nat. Power Sources, Ltd. Liab. Co.*, No. 3:21-cv-00425, 2022 U.S. Dist. LEXIS 46534, at *7 (D.N.J. Mar. 14, 2022) .........................................................................- 13 -

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013). ................................................................- 18 -

*Meyer v. Holley*, 537 U.S. 280 (2003) .......................................................................................- 5 -

*Mitchell v. State Farm Fire & Cas. Co.*, 335 F. Supp. 3d 847, 855 (N.D. Miss. 2018)...........- 29 -

*Moore v. Pro Custom Solar LLC* No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *6 (N.D. Ill. Apr. 12, 2022) .......................................................................................................- 22 -

*NECA-IBEW Rockford Loc. Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013)................................................................................- 14 -

*Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706 (E.D. Pa. July 16, 2025)..........- 25 -

*Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929 (D. Minn. 2020) .........- 5 -

*Pinedo v. City of Dallas, Tex.*, No. 3:14-CV-0958-D, 2015 WL 221085 (N.D. Tex. Jan. 15, 2015) ..................................................................................................................................- 8 -

*Prompt Med. Sys., L.P. v. Allscriptsmisys Healthcare Sols., Inc.*, No. 6:10-CV-71, 2011 WL 12863577, at *1 (E.D. Tex. Feb. 11, 2011) .........................................................- 29 -

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022).................................................................- 23 -

*Santiago v. Merriman River Assocs., LLC*, No. 3:17-CV-2054-VAB, 2018 WL 2465358, at *6 (D. Conn. June 1, 2018) ............................................................................................- 28 -

*Simmons v. City of McKinney, Texas*, No. 4:21-CV-452-SDJ, 2022 WL 3036000 (E.D. Tex. Aug. 1, 2022). ................................................................................................................- 8 -

*Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583, 2021 U.S. Dist. LEXIS 78307 (D. Mass. Apr. 22, 2021) .........................................................................................................- 8 -

*Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017).................- 30 -

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727 (N.D. Ill. 2014)..............................................- 22 -

*VanderSloot v. Charles Baratta LLC*, No. 24-cv-7096, 2025 WL 1898929, at *4 (E.D.N.Y. July 9, 2025) ................................................................................................................. - 18 -
*Vedros v. Fairway Med. Ctr., L.L.C.*, No. CV 20-438, 2020 WL 3128838, at *2 (E.D. La. June 12, 2020) ................................................................................................................. - 29 -
*Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741 (5th Cir. 2010) ..................................................- 2 -
*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) ................................................................................- 24 -
*Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) .......................................................................................................... - 17 -, - 18 -
*Workman v. CarGuard Admin. Inc.*, No. CV-23-00961, 2024 U.S. Dist. LEXIS 11476 (D. Ariz. Jan. 22, 2024) .....................................................................................................- 8 -
*Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016)...- 24 -

**Statutes**
47 C.F.R. § 64.1200(c) ...................................................................................................- 23 -
47 C.F.R. § 64.1601 ......................................................................................................- 24 -
47 C.F.R. § 64.1601(e) ....................................................................................- 25 -, - 26 -
47 C.F.R. § 64.2305 .......................................................................................................- 17 -
47 C.F.R.§ 64.1200 ..........................................................................................- 21 -, - 24 -
47 U.S.C. § 227(a) .........................................................................................................- 17 -
47 U.S.C. § 227(c) .........................................................................................................- 25 -
Fed. R. Civ. P. 12(b)(6) ..................................................................................................- 1 -
Fed. R. Civ. P. 8 .............................................................................................................- 1 -
Tex Bus. & Com. § 302.101 ............................................................................................- 27 -

v

## STATEMENT OF ISSUES

1.  Whether Plaintiff's claims against HomeOver should be dismissed because Plaintiff has

failed to allege that HomeOver is directly or vicariously liable for the alleged wrongful acts?

**Suggested Answer:** No, because Plaintiff has adequately alleged direct and vicarious liability.

2.  Whether Plaintiff has sufficiently alleged the requisite elements of her claims against

HomeOver?

**Suggested Answer:** Yes, Plaintiff's plain pleading meets statutory requirements.

## INTRODUCTION

Defendant HomeOver General Contractors, LLC's (HomeOver or Defendant)'s motion to

dismiss must be denied because the Plaintiff has pled sufficient facts to give rise to the inference

of an agency relationship between HomeOver and co-Defendant "Storm Leads Innovation,"

whom HomeOver admits it hired to place the subject calls at issue. This Court must reject

Defendant's general denial of liability and agency couched as an attack on facts the Plaintiff isn't

expected to know at this stage. Relatedly, the Plaintiff has stated a claim because she pleads

precisely what the statute requires: the receipt of more than one telephone solicitation to her

residential telephone line in a twelve-month period. Defendant's related attempts to toss this case

on a stew of other, underdeveloped, unsupported, and distinguishable grounds, should likewise

be rejected. Defendant's motion must be unquestionably denied.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon

which relief can be granted. In order to state a claim upon which relief can be granted, a

complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the

Rules demand only a "short and plain statement of the claim showing that the pleader is entitled

to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it

rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

**FACTS**

Ms. Starling is like everyone else, she hates telemarketing calls. They interrupt her day and incessantly attempt to sell her things she does not want. Worse, the telemarketers behind them scheme to avoid liability, using unidentified agents, like "Storm Leads Innovation" here, as middlemen to call consumers like Ms. Starling and funnel them to companies like HomeOver as customers with set appointments while disclaiming any responsibility for the agent's misconduct. Telemarketers like Defendant believe this allows them to accept the benefits such conduct provides while avoiding the liability it can create under the TCPA. It does not.

The calls at issue here, at least eight in total, started in 2021 and all proceeded the same way: When Ms. Starling answered, someone claiming from "HomeOver General," or, in one call, the fake alias "TM Roofing," called and attempted to get Ms. Startling to set an appointment for an estimate for a roof replacement. Those calls were never supposed to happen. Earlier that year, Ms. Starling received calls she identified as originating from HomeOver and had previously requested they stop. And, prior to all of this, Ms. Starling listed both of her phone numbers, including her landline, on the National Do Not Call Registry, warning telemarketers like Defendant HomeOver not to contact her without consent. And Ms. Starling never provided any consent to be contacted; to the contrary, she expressly requested the calls stop.

- 2 -

Ms. Starling, who could not believe that she was being so egregiously contacted, despite a prior request that HomeOver cease contacting her, played along with some of the calls to affirmatively identify the callers. At the end of each call, including the last one in which HomeOver used an alias (possibly to attempt to hide as a result of a rash of recently-filed lawsuits from its conduct), the Plaintiff was provided the same callback number for the appointment, 888-459-9138. And, as a result of several of the calls, this worked: Plaintiff was able to identify HomeOver as responsible for the calls, red-handed with its hand in the proverbial cookie jar. And Ms. Starling sues Defendant in a class action because such calls are generally placed to hundreds or thousands of people *en masse*.

Plaintiff's complaint against HomeOver, to be sure, pleads direct liability against HomeOver based on the representations made to Plaintiff during the calls. But it also more than adequately alleges an agency theory under any one of the three generally accepted ones: actual authority, apparent authority, and ratification, based on representations made to her by HomeOver's owner prior to this litigation. Under these vicarious liability theories, Ms. Starling alleges that Defendant, through the (still) undisclosed and unidentified entity it claims to have hired, "Storm Leads Innovation," sent calls to consumers *en masse*. "Storm Leads" would then pitch and qualify the putatively interested prospects, using HomeOver's name and criteria HomeOver dictated, and set the appointment, all for HomeOver, and without HomeOver needing to lift a finger or expend resources on such appointment settings. In other words, Storm Lead operated as a screening vendor, using economies of scale and cheaper labor to collect information from and set appointments with potentially interested customers meeting HomeOver's criteria. And because Storm Leads was screening for HomeOver, Ms. Starling alleges HomeOver dictated what information the agent should collect; indeed, Storm Leads

- 3 -

would not set the appointment with HomeOver unless the appointment met HomeOver's criteria.

And, in so doing, HomeOver and its agent, Storm Leads, operated from the same information system and Defendant HomeOver dictated the information the Storm Leads agent should collect to set the appointment. In other words, defendant ratified the agent's acts, and the agent acted with "apparent" authority. And, in not disclosing its own identity, but instead adopting HomeOver's identity as its own, the agent, Storm Leads, acted with actual authority. At the time of the alleged calls, Ms. Starling had no reason to believe that any other company other than HomeOver was involved in the calls to her.

But in Defendant HomeOver's view, how this all happened, and how the Plaintiff managed to get at least four appointments scheduled with HomeOver, with individuals who claimed to be calling from HomeOver, remains a mystery, calling Ms. Starling's allegations "conclusory" and that such conduct doesn't even show that "HomeOver directed or authorized Storm Leads" at all. Although Ms. Starling explains how HomeOver is alleged to have hired Storm Leads, and how Storm Leads handled the sales process for HomeOver by providing it with confirmed appointments it scheduled, thus removing practically all of the gruntwork from HomeOver's hands, HomeOver labels the allegations "conclusory" and says it is speculative how she got at least four appointments with HomeOver as a result of the illegal calls, as if the appointments just fell in HomeOver's lap. This is not to mention the fact that it entirely discounts Homeover's owner, Mr. Nelson's, own declarations against interest that he hired Defendant Storm Leads to do precisely what the Complaint alleges.

**ARGUMENT**
A.  Plaintiff adequately pleads direct or at least vicarious liability

Defendant, in essence, adopts in its motion an "I didn't do it" defense. But such doubt as to liability is more properly the subject of a jury trial or at the very least a motion for summary

- 4 -

judgment. Defendant's calling program is not the mystery Defendant makes it out to be. Ms. Starling specifies how she knows Defendant and Storm Leads work together to call consumers on the Do Not Call Registry like her without their consent. That satisfies the elements of the Plaintiff's TCPA claims. When alleging claims under the TCPA, a plaintiff need not "elaborate on the specific technical [and operational] details of a defendant's calling system." *Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929, 935 (D. Minn. 2020) (cleaned up). It is enough that they describe their experiences when receiving defendant's calls. *Id*. Plaintiff's pleadings are sufficient at this stage and Defendant's bid to dismiss must be denied.

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald*, 577 U.S. at 168); *see also In re Dish Network*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming vicarious liability jury verdict).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01; *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the RESTATEMENT). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). "An essential element of agency is the principal's right to control the agent's actions",

but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023). For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship . . . are exclusively within the Defendants' custody and control.").

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Defendants are, if not actually, at least vicariously, liable for both of Plaintiff's calls based on all three vicarious liability theories.

*1. Plaintiff's factual allegations are adequate for a finding of direct or vicarious liability.*

Defendant's gaslighting reflects how telemarketers like HomeOver try to game their systems to try to insulate themselves from liability. HomeOver chiefly disputes Ms. Starling's claim on the element that the call be placed, either directly by the Defendant, or by an agent acting on the Defendant's behalf. This strategy shows how Defendant benefits from a calling program that is designed to conceal itself as the entity making the call. Defendants hide who is calling consumers at the front end, and place any blame for misconduct on an undisclosed agent (Storm Leads) while accepting all the benefits the agent provides (like the set appointment). And like Defendant here, they criticize any TCPA claimants who cannot allege how their telemarketing operation works in exacting detail, believing it's grounds for dismissal. It's not.

Courts hold a TCPA claimant in Ms. Starling's circumstance need only raise the "reasonable inference" that the caller acted as defendant's agent: "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations."  *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *35 (W.D. Tex. May 23, 2024). In other words, the Court should not allow Defendant to benefit from the obfuscation it created. That's a familiar tactic that courts reject. When callers, like Storm Leads here, "refuse[] to identify themselves[,]" Plaintiff need only raise the "reasonable inference" Defendant either "apparently authorized or ratified" the calls, even if defendant did not make them itself. *Cunningham*, 2024 U.S. Dist. LEXIS 93370, at *35; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations."). And considering how telemarketers obfuscate their calling practices, a TCPA claimant need not meet the "usual" pleading standard under a vicarious

theory: "[v]icarious liability under the TCPA is a fact-intensive inquiry that does not require the usual level of particularity from the complaint." *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583, 2021 U.S. Dist. LEXIS 78307, at *12 (D. Mass. Apr. 22, 2021) (cleaned up). The standard recognizes "the information necessary to connect all the players is likely in [defendants] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). Thus, Ms. Starling need only "plausibly" allege the theory under one of three theories, pleading either "actual authority," "apparent authority," or ratification. *Workman v. CarGuard Admin. Inc.*, No. CV-23-00961, 2024 U.S. Dist. LEXIS 11476, at *8 (D. Ariz. Jan. 22, 2024).

But before analyzing those theories, Ms. Starling must address how defendant characterizes her complaint. To start, allegations are not "conclusory" just because Defendant says they are; those terms have meaning. Conclusory allegations pattern themselves off a claim's elements, like alleging defendant maintained a policy that violates the law without describing the factual foundation for the allegation. *Simmons v. City of McKinney, Texas*, No. 4:21-CV-452-SDJ, 2022 WL 3036000, at *4 (E.D. Tex. Aug. 1, 2022). Or alleging defendant's conduct violated each of the elements of a Section 1983 action without alleging *how* the violation was committed. *Pinedo v. City of Dallas, Tex.*, No. 3:14-CV-0958-D, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015). In TCPA cases, allegations are more than "conclusory" if they describe the "tenor, nature, or circumstances of the alleged calls[.]" *Davis v. Rockloans Marketplace, LLC*, No. 23cv0134, 2024 U.S. Dist. LEXIS 215499, at *3 (S.D. Cal. Nov. 26, 2024).

Plaintiff's allegations here, which not only detail the calls, but also connect them to HomeOver's direction, both internally and on the broader level of how HomeOver's telemarketing scheme is generally organized, are more than sufficient. She not only alleges the calls, but also third tenor, nature and circumstances. This is not to mention Mr. Nelson's own

declaration against interest that he hired Storm Leads to place the calls. And Ms. Starling also specifies how Storm Leads acted as a hired gun to handle all the dirty work, screening calls according to HomeOver's criteria and only selling HomeOver the interested ones, appointment in hand, all using HomeOver's own brand name.

These allegations, in addition to all others in the Complaint, cannot be considered "conclusory" or boilerplate because the Plaintiff has alleged sufficient facts and explained the basis for alleging them. Indeed, Ms. Starling is not reciting the elements, she is alleging every piece of information she has about the calls and what Mr. Nelson told her, and has further drawn inferences based on that information. Bearing all this in mind, this Court should deny Defendant's motion for two reasons. *First*, Ms. Starling has pleaded defendant's liability under a "vicarious" theory, at minimum. And *second*, the Court should disregard how Defendant construes the complaint in its favor, and hold that the Plaintiff's facts and the overall conduct at issue may yet be probative of direct liability.

2. *Storm Leads acted with HomeOver's actual authority.*

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc*., No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in

- 9 -

TCPA vicarious liability case); *Rapid Response*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business …").

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an inference of actual authority based on the fact that the calls were all made from agents who claimed to be calling from HomeOver and were pitching HomeOver's roofing goods and services. To that end, this case is nothing like the cases cited by the Defendant holding that the plaintiffs therein inadequately pled actual authority. For example, in *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. EP-24-CV-00289-DB, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025),

the Western District held there was no actual authority because the telemarketers "did not

identify themselves or the company for which they worked." But that's precisely the allegation

here. Similarly, that was precisely the reasoning for the decision in *Heller*, which itself cited to

*Callier v. SunPath*, and which itself distinguished from other cases where court have held that

actual authority *was* satisfied when the callers used the company's name. *Heller v. Marriott*

*Vacations Worldwide Corp.*, No. EP22CV00398FMMAT, 2023 WL 6702696, at *6 (W.D. Tex.

Oct. 11, 2023); *contra Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 331 (D. Md. 2022)

(actual authority when script used defendant's name and marketed defendant's products);

*Krakauer*, 925 F 3d at 663 (actual authority when agents set appointments, used the Dish logo,

and where Dish was aware of agents' legal violations but took no action to ensure compliance).

A cursory review of the remainder of Defendant's string citation demonstrate that each of

the cases found that there was no inference of control where, critically, the third party callers did

not use the alleged principal telemarketing company's name, or simply hired an offshore

telemarketer that used its own identity to conduct the calling and ended up selling the lead to one

entity out of potentially many. *E.g.*, *Callier v. Optimum Solar USA*, No. EP-23-CV-00273-KC-

MAT, 2024 WL 2044832, at *5 (W.D. Tex. Mar. 21, 2024). Similarly, in *Wide Merchant*, there

was no requisite degree of control when the Defendant worked with multiple "independent sales

organizations . . . to market its services and obtain referrals." *Callier v. Wide Merch. Inv., Inc.*,

671 F. Supp. 3d 736, 744 (W.D. Tex. 2023). To be true, simply alleging that HomeOver

purchased leads from a third party caller is likely insufficient for a finding of actual authority,

but where, as here, the caller *uses the Defendant's name* and *schedules appointments directly for*

*the Defendant*, such allegations are sufficient for the requisite finding of actual control through

*exclusive* calling, based on the use of the Defendant's HomeOver name.

- 11 -

Rather, Plaintiff's allegations are similar to those the Western District of Texas already held were sufficient in *Watts Guerra*, where the Court held sufficient the plaintiff's allegations that the call center "served a retainer agreement to him" naming the defendant law firms. *Watts Guerra*, 2024 WL 3100773, at *8. Like here, the totality of the calling conduct, including the use of HomeOver's name and scheduling an appointment with HomeOver, are more than sufficient to infer actual authority.

3. *Storm Leads acted with HomeOver's apparent authority.*

Second, HomeOver is vicariously liable under an "apparent authority" theory. Apparent authority is established "from a third party's perspective" and attaches when defendant's statements or conduct "reasonably give the appearance that Defendant, the purported principal, authorized [] the purported agent, to initiate the Calls on its behalf." *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 175 (E.D.N.Y. 2018). The FCC's own illustrative examples, even if they are not law, are instructive and provide guidance on this topic. *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6592 (2013). The FCC has held as indicative of apparent authority instances in which "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control," including "[t]he ability by the outside sales entity to enter consumer information into the seller's sales or customer systems[.]" *Id.*

From Ms. Starling's perspective, nothing suggested the caller was anything other than HomeOver General itself or HomeOver General's agent. The caller did not associate itself with its own, independent company, did not mention Storm Leads on the calls, nor did Ms. Starling know who was calling her until she proceeded to schedule an appointment and received the Defendant's appointment scheduling number. That procession was a smooth transfer of

information, and interaction, between Storm Leads to HomeOver because it is clear they operated from the same information gathering and appointment setting system. As courts hold: "the smooth transfer from the initial [] contact to [a live person] and then to [another live person] of [defendant] . . . shows a cooperative relationship from which one may infer authority or apparent authority." *Doyle v. GoHealth, LLC*, No. 22-04291, 2023 U.S. Dist. LEXIS 241083, at *7 (D.N.J. Dec. 7, 2023) (citing and quoting *Landy v. Nat. Power Sources, Ltd. Liab. Co.*, No. 3:21-cv-00425, 2022 U.S. Dist. LEXIS 46534, at *7 (D.N.J. Mar. 14, 2022).

Again, these allegations are unlike *SunPath*, where the plaintiff attempted to impose vicarious liability for the actions of *unidentified* telemarketing companies based entirely on conclusory allegations that the named defendants were "direct beneficiaries of the illegal telemarketing calls," without *any* corresponding representations on the calls themselves. *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020). And it's also plainly unlike *Gonzalez*, where the callers didn't even say they were calling from the defendant bank. That is precisely the opposite of what occurred hre. Indeed, the call here was so "smooth" to the point where Ms. Starling had no reason to believe she was being called by anyone other than Defendant until Defendant's owner revealed Storm Leads' involvement. And Defendant manifested that circumstance by design, choosing to share its systems and structure its calling conduct in such a way to generate leads for it.

As a result, the Court should find Storm Leads acted with apparent authority.

4. *Storm Leads Ratified HomeOver's Conduct*

Third, Defendant ratified Storm Leads' acts. Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01(1). A principal can ratify an act by

"manifesting assent that the act shall affect the person's legal relations," or by "conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2). That includes circumstances like those here, where Defendant "controls a telemarketing scheme whereby [defendant] sets the criteria for leads, and [the agent] makes solicitation calls to potential clients on [defendant]'s behalf." *Gonzalez v. Burger L., LLC*, No. 4:23-CV-1094, 2024 U.S. Dist. LEXIS 41018, at *9 (E.D. Mo. Mar. 8, 2024) (denying a motion to dismiss when plaintiff alleged she received "more than one solicitation call on behalf of [defendant], and during at least one call, she was transferred by [the agent] to [defendant]").

Indeed, Plaintiff has alleged that Defendant controlled what information the agent collected from Ms. Starling to screen her as a lead. Compl. ¶ 44, 54, 55, 56. And Ms. Starling does not allege this without support. The caller would not schedule a roofing appointment until and unless she provided the information it was looking for, including the particulars for the roof replacement work. And this agent scheduled an appointment with HomeOver on at least four separate occasions, precisely as Plaintiff alleges HomeOver hired Storm Leads to do. And this was all to HomeOver's benefit, as Storm Lead screened Plaintiff for a potential sale and collected information exclusively for Defendant to facilitate an appointment, that is, sell Defendant only an interested, confirmed customer. Compl. ¶ 45. Thus, Defendant cannot deny it had "full knowledge of the facts and the choice to either accept or reject the benefit of the transaction," as it knew Ms. Starling had never consented to receiving calls on its behalf, had expressly asked them to stop, yet it allowed the appointments to be set, including one of which was completed. *See NECA-IBEW Rockford Loc. Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013).

While defendant disputes ratification, it does so on grounds that either do not impact the

- 14 -

analysis or are belied by the complaint. It says no agent-principal relationship could exist because Ms. Starling has allegedly insufficiently alleged that HomeOver accepted the benefits of the conduct with full knowledge of the underlying circumstances. But it accepted at least four appointment requests and completed at least one such request, despite knowing that the Plaintiff's telephone number was on the Do Not Call list, and despite being the subject of other TCPA litigation around that time arising out of the same vendor here. Plaintiff does not couch her allegations of ratification simply on Mr. Nelson's declarations against interest. To be sure, those allegations support a ratification theory on the basis that Mr. Nelson had actual knowledge of Storm Leads' illegal conduct but failed to terminate Storm Leads, but it also belies the assertion that the appointments were set. Simply put, HomeOver has no business accepting a lead, let alone setting an appointment with, someone who has made it monumentally clear that they don't wish to receive calls.

This is not to mention that the information of ratification at issue is "peculiarly within the possession and control of the defendant." *Guadian v. Debtblue LLC*, No. EP-23-CV-329-KC, 2024 U.S. Dist. LEXIS 70167, at *8 (W.D. Tex. Apr. 16, 2024).

As a result, HomeOver knew it lacked Ms. Starling's consent when its agent called her, yet it accepted the benefit of the transfer anyway. That again renders this case unlike *Gonzalez* or *SunPath*, where neither defendant had any knowledge of the third party's conduct, let alone here, authorizing calls to be placed using their name to directly set appointments with them, appointments they can scrub against the Do Not Call List. Thus, the Court should find Defendant ratified its agent's acts here.

5. *Ms. Starling maintains a direct liability theory.*

Ms. Starling points out that her allegations likewise suffice under a direct liability theory.

Indeed, the facts at issue here mirror those found in other "direct" liability cases. Telemarketers often mask their identity when making calls. Defendant is the only entity to have identified itself on the calls at issue here. Nothing suggests another entity was involved, contrary to Mr. Nelson's assertions and defendant Storm Leads was the only later revealed. Discovery will identify if Storm leads even exists at all. Simply because Mr. Nelson pointed to the potential existence of a third party, the Court should not assume a third party was even involved. The calls Ms. Starling received, which were identified as directly coming from the Defendant, are enough to state a claim on their own under a direct liability theory. Plaintiff is entitled to take callers at their word.

> B. The TPCA applies to and protects Plaintiff's "residential" cell phone line.

Defendant, citing a line of cases, posits that the TCPA's Do Not Call provisions to not apply to cell phones because they only protect "residential subscribers" and thus do not apply to residential cell phones. (MTD at 17) (quoting 47 U.S.C. § 227(c)(1)). That's wrong both as a matter of statutory construction as well as the very courts it cites, which each distinguish their reasoning. Start with statutory construction. The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (citing cases).

To see why, consider who is protected: "residential telephone subscribers" or, elsewhere,

just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025). That leaves the word "residential," which HomeOver's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *accord Wilson*, 2025 WL 1784815, at *5. Many cell phone subscribers, including Ms. Starling, fit that description. The TCPA's text and FCC regulations establish that meaning of the word "residential." The current text of the TCPA, as amended in 2005, also contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A). And FCC regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999). There is no question that cell phones can be "residential," as nothing in the text indicates that Congress intended to couch recovery on the presence or absence of a physical wire.

HomeOver points out that in a different part of the TCPA, in restrictions on autodialer and robocall technology in § 227(b), the statute uses the words "cellular telephone service,"

- 17 -

while § 227(c) does not have similar language. (MTD at 18). "The force of any negative implication, however, depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Here, context refutes HomeOver's negative inference, because § 227(b) and § 227(c) have a "markedly different scope and structure." *Wilson*, 2025 WL 1784815, at *4; *VanderSloot v. Charles Baratta LLC*, No. 24-cv-7096, 2025 WL 1898929, at *4 (E.D.N.Y. July 9, 2025). Section 227(b) identifies intrusive telemarketing practices based on the *technologies* involved, while § 227(c) focuses on protecting identified *people* from unwanted solicitations. *See Wilson*, 2025 WL 1784815, at *4; *Isaacs*, 2025 WL 2268359, at *3. That's an obvious reason why "cellular telephones" would be expressly mentioned in § 227(b), but not § 227(c).

Continue by examining the authorities Defendant cites, including *Callier*, *Cunningham*, and this Court's decision in *Johnson*, which shows why the Plaintiff's pleading her residential use of the number makes all the difference. A review of each of those decisions reveals that the subject courts dismissed the plaintiffs' claims there not because cell phones cannot be "residential." As the analysis above reveals, they can be. But every last authority that Defendant cites to dismissed because the respective plaintiffs "pled no facts pertaining to how [their] cellular phone was used," either for permissible residential purposes, or for impermissible business purposes. *E.g.*, *Johnson v. Palmer Admin. Servs., Inc.*, No. 622CV00121JCBKNM, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), report and recommendation adopted, No. 6:22-CV-00121, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022). To that end, every authority that Defendant cites, save for one, also predate the Fifth Circuit's binding decision in *Cranor v. 5 Star Nutrition, L.L.C.*, which rejected a narrow view of "residential telephone subscribers" in the TCPA context to exclude cell phones. 998 F.3d 686, 689 (5th Cir. 2021).

Plaintiff here has pled what the plaintiffs in those cases did not and what *Cranor* can be

- 18 -

read to require, pleading precisely that her numbers are "residential, non-commercial" numbers that are used "for personal, residential, and household reasons," in addition to being "assigned to a residential telephone exchange service for consumers and are not assigned to a telephone exchange service for businesses." (Compl. ¶ 19-23). As the Western District of Texas, the very Court that decided *Greensky*, explained in distinguishing it, "There is no binding precedent that would foreclose Plaintiff's allegations, as pleaded, under the TCPA. . . . This Court agrees with courts in the Fifth Circuit that have held that a cellular telephone number qualifies as a residential number under the TCPA if the plaintiff alleges sufficient facts to make it clear that his cellular telephone is used for residential purposes." *Callier v. Optimum Solar USA*, No. EP-23-CV-00273-KC-MAT, 2024 WL 2044832, at *6 (W.D. Tex. Mar. 21, 2024); *accord Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *6 (W.D. Tex. July 15, 2024) (crediting nearly identical allegations of "personal, family, and household use.")

      C.   <u>The calls were solicitations. There is no personal registration requirement under the TCPA.</u>

    *1.  The calls were made to solicit Defendant's roofing services, and thus were solicitations.*

Defendant challenges both the Plaintiff's pleading that the telephone solicitations it sent weren't actually telephone solicitations, and that the Plaintiff has failed to plead receiving "more than one" such solicitation within a twelve-month period. Both arguments fail.

First, the Plaintiff has clearly pled enough to support the conclusion that the calls were solicitations. Defendant cites the right standard, a call initiated for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose and intent for initiating the

communication, not the contents of the communications themselves. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent."). While the message content may be *indicative* of purpose, it is nevertheless not *dispositive* of the message's purpose, a critical distinction for purposes of applying the motion to dismiss standard here. *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (holding that, to discern a caller's purpose, the Court must consider both the content of the call as well as its context). The inquiry also demands "a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

Defendant's unwarranted "reasonable inference" that they were calling to solicit the Plaintiff's "assistance" in completing an appointment is belied by the pled contents of the calls themselves, which were plainly sent to solicit Plaintiff "to purchase and schedule a roofing inspection in connection with a roof-replacement job," Compl. ¶ 27, to schedule a roof inspection estimate "related to roof- replacement work," and to "solicit roof-replacement services for a home Plaintiff previously owned" Compl. ¶ 28, 33, to name a few. Those facts make it clear that the purpose of the calls was to sell the Plaintiff a *new roof*, unlike the account security code in *Aderhold* or the survey call in *Hunsinger*. The content and context of the calls Plaintiff received, therefore, give rise to a plausible purpose sufficient at this stage: they were plainly made to solicit the Plaintiff to get her to buy a new roof. That's sufficient at this stage.

Next, consider the requirement that the Plaintiff receive more than one call in a twelve-month period under the TCPA. The Complaint plainly pleads these facts. The Plaintiff states that the Plaintiff received "unwanted calls (plural) from Defendant in March through April of 2021" to her cell phone, which she requested "stop and to place her cellular telephone number on

Defendant HomeOver's internal Do Not Call list." Compl. ¶ 25. Despite this fact, the Plaintiff pleads receiving a call on November 16, 2021 to the *same telephone number* with an individual who *identified themselves as calling from HomeOver directly* (thus adequately alleging direct liability), to "purchase and schedule a roofing inspection in connection with a roof-replacement job." Compl. ¶ 27. This is far more than the "more than one" call the statute requires.

      Similarly, consider the calls to the Plaintiff's landline. As an initial matter, the statute does not itself couch that the calls from the "same entity" need to be placed to the same number. To the contrary, it states that a "person who has received more than one telephone call" may file suit. 47 U.S.C. § 227(c)(5). The plain text of the statute does not require that the calls be made to the same telephone number, only that the calls be made to the same "person," in order to bring suit. And it goes without saying that a person may have more than one telephone number; persons often do. Congress knows how to legislate and it knows how to draft statutes. If Congress intended to require the calls all be placed to the same number to satisfy this numerosity gate of the statute, it would have explicitly said so. Despite never providing her landline number to HomeOver, on January 3, 2022, the Plaintiff received a call to her landline out of the blue. Compl. ¶ 31. This call violated the TCPA because it was at least the second call that the Plaintiff received from Defendant in a twelve-month period. It was actually even much more than that. But even assuming *arguendo*, that the Plaintiff's conduct on that call did establish a business inquiry, such inquiry only lasts for "the three months immediately preceding the date of the call." 47 C.F.R.§ 64.1200(f)(5). But, despite this, the Plaintiff received a call on June 6, a full *six* months *after* any alleged consented to inquiry to her landline, thus further establishing "more than one" solicitation in a twelve month period. Compl. ¶ 34.

      Starling received at least eight calls, spread across two telephone numbers, all linked to

- 21 -

the same entity, the Defendant, including the calls from the "fake alias" "TM Roofing," which as the Plaintiff explains, is Defendant HomeOver because HomeOver's *same callback telephone number*, 888-459-9138, was provided to the Plaintiff on these calls. Although Defendant chastises Ms. Starling for supposedly alleging "no facts connecting these calls to HomeOver," such allegations ignore the provision of the *same callback telephone number.* Compl. ¶ 36. It defies reason to conclude the calls are unrelated when the caller proceeded the same way with each call and provided the same callback number. Ms. Starling's complaint establishes a pattern: Defendant hires other companies to cold call people indiscriminately, who are intentionally vague in their initial sales pitch to customers (presumably to avoid ill will for Defendant's brand), screens them with questions, and then schedules an in-person appointment to complete the sale, giving the same HomeOver phone number to cancel the appointment. Compl. ¶ 36.

Courts have credited nearly identical, and far less specific, allegations at the pleadings stage in holding that plaintiffs have stated claims, despite the "two call" gate requirement. For example, in *Moore v. Pro Custom Solar LLC*, plaintiff answered seven calls that he alleged violated the TCPA, but could only confirm the caller's identity on the seventh call. No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *6 (N.D. Ill. Apr. 12, 2022). There, as here, defendant claimed plaintiff "allege[d] only one violative call" because he "was only able to identify the seventh caller in a stream of identical calls[.]" *Id.* The district court disagreed. It noted that because each call followed the same "telemarketing script," the court could infer that the "first six calls were made by [defendant]." *Id.* This is because courts look to the circumstances to decide whether calls may be related. *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("the content and timing of the fourth call allows the court to draw a reasonable inference that [defendant] made the first three calls to market [] services"). To do otherwise

- 22 -

would ignore "the practical realities of these sorts of violations—a TCPA claim is plausible when it relies on reasonable inferences drawn from the later-revealed identity of the caller[.]" *Cunningham*, 2024 U.S. Dist. LEXIS 93370, at 36. Requiring "anything more would demand speculation by the plaintiff—and allow speculation by Defendant[.]" *Id.*

For these reasons, the Plaintiff has unquestionably alleged the receipt of more than one call in a twelve month period and satisfied this requirement.

2. *There is no "personal registration" requirement under the TCPA.*

Reading 47 C.F.R. § 64.1200(c)(2) to require personal registration for each new subscriber cannot be reconciled with the requirement that registrations "must be honored indefinitely," or with the reality that the Registry stores only numbers, not names. Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id.* Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, *Rombough* purports to require some consumers to do the impossible, personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises, including in the Fifth Circuit. *E.g.*, *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022) (calling *Rombough's* rationale one that "borders on the frivolous."); *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *5-6 (D. Ariz. March 13, 2024); *Watson v. Manhattan Luxury*

*Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022)

(holding that "whether each class member registered their number on the NDNCR is

irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at

*4 (D. Colo. Nov. 14, 2023). This Court should not follow *Rombough*'s anomalous, and rejected,

reasoning.

### D.   The internal do not call claim is actionable as to Plaintiff's cell phone.

Defendant claims that the Plaintiff's plain and well-pled internal do not call claims, at

least with respect to the calls made to her cell phone, do not survive because the Plaintiff has

allegedly failed to "identify any regulation under Section 227(c) to support her claims." (MTD at

22.) Though the Plaintiff does not explicitly outline that these claims arise from 47 C.F.R. §

64.1200(d)(3), that issue is easily rectified either here or through amendment. That statute makes

it a violation of 47 U.S.C. § 227(c) to refuse to "honor a residential subscriber's do-not-call

request within a reasonable time from the date such request is made." 47 C.F.R. § 64.1200(d)(3).

And, for the avoidance of doubt, the Plaintiff makes no internal do not call claim as to her

landline number because she did not previously request that Defendant refrain from calling it

because she had received no such calls from Defendant at the time.

### E.   There exists a private right of action for the caller ID regulations.

Defendant cites a line of superseded authority to claim that there is no private right of

action for the Plaintiff's caller ID claims in 47 C.F.R. § 64.1601(e)(1). At least *five* subsequent

court decisions from *three* jurisdictions in the past year *alone*, have confirmed that the reasoning

employed by the District of Maryland in *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016

WL 4592373, at *4-5 (D. Md. Sept. 2, 2016), is faulty. The preeminent case holding the same is

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025), in which the

- 24 -

very same court that decided the *Selectquote I*, *Total Ins.*, and *Tobias* cases cited by Defendant took a fresh look at the statute and concluded its previous reasoning was incorrect. Notably, since *Selectquote II*, *every single court* to have considered the issue, *without exception*, has concluded that *Worsham* and its progeny were wrongly decided.

As the *Selectquote II* Court recognized, the court's previous decisions, and *Worsham*, all lied in the fact that those cases (as well as *Meyer* and *Griffin*, which each relied on *Worsham*) failed to consider under which section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated, nor did any of those cases reach their conclusions independently from simply adopting the faulty reasoning the District of Maryland relied in *Worsham*. Instead of tussling with the statute and analyzing it, as in *Selectquote II* and its progeny, those cases simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c), not 47 U.S.C. § 227(d), which contains no private right of action. As best Plaintiff can discern, *Selectquote II* was the first court to engage in such analysis, which the *Newell* and subsequent courts credited, without exception. *Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025).

As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is

axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations;

*Selectquote II*, 773 F. Supp. 3d at 376. As the Court observed in *Selectquote II*, all but § 227(c) are quickly eliminated as not even remotely applicable to the statutory provision here, and therefore, the subject caller ID provisions must have been promulgated, and are actionable, under 47 U.S.C. § 227(c). The statutory provision at issue here could not have been promulgated pursuant to Section 227(d), because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons. Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out. And, the transmission of accurate caller ID name has nothing to do with information sharing with the FCC relating to violations contained in Section 227(i). *Id.*

So, the only possible statute under which 47 C.F.R. § 64.1601(e)(1) could have been promulgated is 47 U.S.C. § 227(c), which Defendant concedes provides for a private right of action. Finally, Defendant's argument for why the caller ID regulations would not apply here, that the calls were not "telemarketing," fails for the same reason they were solicitations. This

- 26 -

Court should not dismiss the caller ID claims here, either.

        F.   <u>The Texas state law claims apply.</u>

Defendant claims that the Plaintiff has inadequately pled that Section 302.101 of the TEXAS BUSINESS AND COMMERCE CODE was violated because the calls were not "telephone solicitations" and because the Plaintiff has not pled that she was a "purchaser located in Texas" at the time of the calls or that the calls were "[made] from a location in [Texas]." These arguments have no merit. First, as explained above, the calls were "telephone solicitations" because they were made to induce the Plaintiff to purchase a roof, which clearly falls under the statute's text. TEX BUS. & COM. § 302.101(7).

Relatedly, the Plaintiff has pled that she is a purchaser located in Texas, or alternatively, that Defendant made its solicitations from Texas. The Plaintiff has pled that the Defendant is a "a resident of this State and is a resident of this District, having its registered office in New Carrollton." Compl. ¶ 9. The Plaintiff pleads she received the calls to two of her telephone numbers, which are 817- area code telephone numbers. Compl. ¶ 19, 20. This Court can take judicial notice of the fact that the 817- area code is assigned to Texas. Similarly, the Plaintiff pleads receipt of calls from 817- and 469- area code phone numbers, which give rise to the inference that the calls were placed from a location in Texas, as well. Compl. ¶ 39. Indeed, the Complaint alleges that the calls simply transmitted geographic locations or spoofed names of local residents in the caller IDs transmitted, all of which are in Texas. *Id.*

Though the Plaintiff's allegations are simple, they are far from conclusory. The Plaintiff has alleged that the calls all came from Texas area codes and bore Texas caller IDs, giving rise to the inference that they were placed from a business location in Texas. And the Plaintiff describes the calls to her 817- area code numbers, including a *landline*, at her home in Texas, and similarly

- 27 -

discusses solicitation for a roof inspection for a property (in Texas) she had previously owned. Those are sufficient to give rise to the inference that the Plaintiff is a Texas resident, as she is. But to the extent that something here is insufficient, the Court need only give the order to the Plaintiff granting her leave to amend and she will do so to explicitly allege her Texas residency.

G. Plaintiff's counsel are entitled to attorneys' fees if this putative class is certified.

As the Complaint makes clear, Plaintiff only seeks an award of attorney's fees in connection with any common fund associated with a class action judgment. The Plaintiff does not contend that the TCPA is a fee-shifting statute. Instead, the request for attorneys' fees is appropriate because this case is a class action, and the Court could award fees if the litigation ultimately resulted in a common fund benefiting class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This is applicable in TCPA class actions. *See, e.g.*, *Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356, 360 (E.D. Pa. 2017), (approving a TCPA class action settlement and noting that "[a]ttorneys who create a settlement fund for class members are entitled to reasonable compensation from that fund."); *Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016) (denying request to strike request for attorneys' fees in TCPA class action); *Santiago v. Merriman River Assocs., LLC*, No. 3:17-CV-2054-VAB, 2018 WL 2465358, at *6 (D. Conn. June 1, 2018) (collecting cases and noting that, "By contrast, courts in this District have refused to strike fee requests in TCPA cases where a complaint states allegations on behalf of a putative class.")

There is no reason for the Court to reach a different result here. Plaintiff is not seeking the recovery of attorneys' fees in connection with her individual action, but rather only with regards to her class claims, and Defendant's motion to dismiss in this regard should be denied.

H. The injunctive relief claims should not be struck

Defendant finally (improperly) moves under Rule 12(b)(6) to dismiss the Plaintiff's claims for injunctive relief because they are allegedly overbroad and because there is no allegation of future harm. Not so. As an initial matter, Defendant applies the wrong standard. A request to dismiss a claim for injunctive relief is appropriately evaluated under Rule 12(b)(1), not Rule 12(b)(6), because Rule 12(b)(6) applies only to "claims," not remedies, as a request for injunctive relief. *Mitchell v. State Farm Fire & Cas. Co.*, 335 F. Supp. 3d 847, 855 (N.D. Miss. 2018), rev'd on other grounds, 954 F.3d 700 (5th Cir. 2020); *Vedros v. Fairway Med. Ctr., L.L.C.*, No. CV 20-438, 2020 WL 3128838, at *2 (E.D. La. June 12, 2020). Injunctive relief is a remedy, not a cause of action. *Prompt Med. Sys., L.P. v. Allscriptsmisys Healthcare Sols., Inc.*, No. 6:10-CV-71, 2011 WL 12863577, at *1 (E.D. Tex. Feb. 11, 2011).

Under the 12(b)(1) standard, there unquestionably remains the risk of future harm. This Court can take judicial notice of other lawsuits filed against HomeOver in Texas Small Claims courts continuing to allege the same type of illegal calling conduct. And, as *Prompt Med.* makes clear, the Plaintiff's pleading of future harm is not even required to plead a claim for injunctive relief in the first place. In any event, the Plaintiff is entitled to an injunction because she is at risk of future injury. As a telephone user, Plaintiff is at risk of future telemarketing calls from Defendant. Defendant offers no facts or arguments rebutting the risk that it will continue to make calls, as alleged, nor does it even claim to have ceased making them, let alone with highly illegal inaccurate caller IDs for which they have no legitimate reason to make. For a statutory injunction, like under the TCPA, Article III's standing requirement centers "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Particularly at this stage, Plaintiff's allegations establish standing to seek injunctive relief based on the TCPA's statutory scheme.

- 29 -

Defendant's argument that the injunctive relief request is overly broad misconstrues the Plaintiff's request and is premature because the time to grant such relief has not yet run, so determining the appropriate scope of an injunction will necessarily depend on the evidence adduced throughout the case and at trial. "Otherwise, a defendant could evade prospective injunctive relief simply by inflicting harms that are too transitory to last the length of an entire lawsuit or, in this case, by ceasing the alleged violations with respect to plaintiffs who step forward." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017). *Snyder* rejected the argument that the cessation of calls deprives one of injunctive relief:

> If this were sufficient to defeat standing, Ocwen would be able to cease calls to any individual the instant he joined the case as a named plaintiff and thereby indefinitely avoid injunctive relief, while keeping the allegedly unlawful practices in effect. A defendant's choice to end the challenged behavior— where he remains free to resume the unlawful conduct at any time—is insufficient to render plaintiff's claim moot.

*Id.* at 901. Plaintiff's allegations here are sufficient. *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *7 (D.N.J. Jan. 11, 2023) (denying request to dismiss injunctive relief claims); *Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) (same); *Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 1782728, at *5 (W.D. Pa. Feb. 6, 2023) (denying dismissal and holding that the scope of the proposed injunction was within the zone of interests protected by the TCPA in enjoining future violations of the same). This Court should likewise hold. The Plaintiff requests narrow injunctive relief permitted under the TPCA to enjoin future violations of the TPCA in accordance with the TCPA's explicit remedy; the Plaintiff does not seek to enjoin the Defendant from making calls entirely. This Court should refuse to dismiss the injunctive relief claims at the pleadings stage.

## CONCLUSION

The Motion should be denied or leave to amend granted to correct any deficiencies.

RESPECTFULLY SUBMITTED AND DATED December 2, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, a copy of the foregoing was served

electronically on counsel for the Defendants via the ECF system, which will send a copy to all

counsel of record.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Attorney for Plaintiff

- 31 -