IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KIMBERLY STARLING, Individually and on behalf of all others similarly situated,<br>     *Plaintiff*<br><br>v.<br><br>HOMEOVER GENERAL CONTRACTORS, LLC<br><br>AND<br><br>"STORM LEADS INNOVATION",<br>     *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:25-CV-993 |

**DEFENDANT HOMEOVER GENERAL CONRACTORS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

I.       **Plaintiff Failed To Allege That HomeOver is Directly Or Vicariously Liable**

Plaintiff has not pled any of the three theories of vicarious liability: actual authority, apparent authority, and ratification. She has also not alleged any basis for direct liability.

Plaintiff concedes, as she must, that "simply alleging that HomeOver purchased leads from a third party caller is likely insufficient for a finding of actual authority." Dkt. 9 at 16. Yet this is all she has done. Dkt. 1, ¶¶ 41-45 (alleging HomeOver hired Storm Leads to find potential customers). Her vague assertions relating to Storm Leads' use of "HomeOver's criteria" to set appointments are not alleged in the Complaint nor would they show that HomeOver "controlled— or had the right to control" Storm Leads' calling practices, or as relevant here, how Storm Leads determines who to call. *See Guadian v. Debtblue LLC,* 2024 U.S. Dist. LEXIS 70167, at *8-9 (W.D. Tex. Apr. 16, 2024) ("[C]ourts consider whether defendants maintained control over the content, timing, and recipients of the calls or text messages sent by the telemarketer").

It is not sufficient to simply allege the callers used HomeOver's name during the calls. As reflected in the cases cited by HomeOver, the issue turns on whether there are sufficient allegations that HomeOver "controlled" the calling parties' practice and not whether the callers identified the companies they worked for. Dkt. 6 at 14 (citing cases). Plaintiff's own cases demonstrate that "control" is the determinative factor and that dismissal of her claims is proper. *See e.g., Guadian*, 2024 U.S. Dist. LEXIS 70167, at **9-10 (one defendant allegedly "instructed [telemarketer] regarding when and where to call consumers" but another defendant dismissed due to lack of similar allegations); *Smith v. Liberty Mut. Ins. Co.*, 2021 U.S. Dist. LEXIS 78307, at **14-15 (D. Mass. Apr. 22, 2021) (dismissing TCPA claims because complaint "never alleges that Liberty Mutual had control over or any other relationship with the callers who contacted Plaintiff"); *Bradley v. DentalPlans.com*, 617 F.Supp.3d 326, 339 (D. Md. 2022) (finding *prima facie* showing

of actual authority where complaint contained "specific allegations regarding Cigna's ability to control DentalPlans' marketing campaign").

*Cunningham v. Watts Guerra, LLP* is an outlier in this Circuit[1] and is distinguishable because the callers in that case refused to identify themselves or the companies they worked for (the opposite of what Plaintiff has alleged), and the plaintiff received follow-up documents from the defendants (no similar allegation here). *Id.*, 2024 U.S. Dist. LEXIS 93370, at **34-35 (W.D. Tex. May 23, 2024). HomeOver's cases are more persuasive on this issue. *See* Dkt. 6 at 13-14.

Plaintiff's apparent authority and ratification theories fail because they rely entirely on unpled "facts" which appear nowhere in the Complaint, including that HomeOver allegedly "share[d] [Storm Leads'] systems and structure[d] its calling conduct" and allegedly "[knew] that the Plaintiff's telephone number was on the Do Not Call list."[2] *See* Dkt. 9 at 17-20. The statement that HomeOver allegedly "knew" it lacked consent directly conflicts with Plaintiff's allegations showing that she consented to and invited further calls by agreeing to set up appointments.

Plaintiff cannot avoid her pleading obligations by claiming the facts relating to an agency relationship are exclusively within HomeOver's possession. Although the court in *Guadian v. Debtblue LLC,* observed that some courts have required less specific allegations regarding agency, it ultimately followed other courts that have "insisted on non-conclusory allegations of authority and control." *Id.*, 2024 U.S. Dist. LEXIS 70167, at **7-8. This Court should do the same.

As to direct liability, Plaintiff does not dispute that HomeOver cannot be directly liable for the alleged calls if the Court assumes (as it must) that Storm Leads "place[d] the calls at issue"

---

[1] *Watts Guerra* has not been cited by any court for the proposition for which Plaintiff has cited it.

[2] The "Facts" section in the Opposition does not contain a single citation to the Complaint.

(Dkt. 1, ¶ 3). She cannot rewrite her Complaint with a flatly contradictory theory that HomeOver placed the calls.

## II.   The DNC Provisions Do Not Apply To Cellphones

Plaintiff confirms that each of her TCPA claims (Counts I, II and III) arise under Section 227(c) of the TCPA.[3] All three claims must be dismissed because under the plain language of the statute only "residential telephone subscribers," and not cellphone subscribers, are protected. Dkt. 6 at 17 (discussing the FCC's creation of the NDNCR pursuant to its congressional authority to issue regulations "to protect *residential telephone subscribers'* privacy rights).

Plaintiff relies on FCC orders and guidance that impermissibly expanded the reach of the statute beyond residential telephone subscribers to cell phone subscribers.[4] In light of the Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ("*Loper Bright*"), however, this Court need not defer to the FCC's pronouncements. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025) ("*McLaughlin*") (trial courts not bound by FCC's interpretation of TCPA). Instead, this Court must independently interpret the TCPA's plain language and utilize "the reading the [C]ourt would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 400 (overturning *Chevron U.S.A., Inc. v. Natural*

---

[3] *See* Dkt. 9 at 31 (confirming that Count II arises under Section 227(c)).

[4] For example, the FCC improperly indicated that Section 64.1200(c) could apply to cellphones. *See* 47 C.F.R. § 64.1200(e) ("[t]he rules set forth in paragraph (c) . . . are applicable to any person or entity making telephone solicitations or telemarketing calls . . . to wireless telephone numbers to the extent described in the Commission's Report and Order," issued in 2003). The referenced Order states: "Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. . . . [W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action." FCC 03-153 (2003 Order), at ¶ 36. Because this Order contravenes the TCPA's plain language, the FCC's attempt to expand the scope of section 227(c) of the TCPA to cover cellphone subscribers must be disregarded.

*Resources Def. Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*")). And, critically in this case, the Supreme Court made clear that, "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. The Court must interpret the TCPA, as it was written in 1991, and without regard to the modern-day transition from landline to cellular telephones.

Congress knew the difference between "residential" telephones and "cellular" telephones in 1991, and it distinguished between the two throughout the TCPA.[5] Congress' deliberate statutory distinction between residential telephones and cellphones must be respected. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (courts "are obliged to give effect, if possible, to every word Congress used" when construing a statute).

If the Court accepts Plaintiff's invitation to eliminate the distinction between cellular and residential telephone lines, this would trigger a domino effect throughout the TCPA, depriving distinct statutory terms and provisions of their unique meanings.[6] As the D.C. Circuit recognized, "[e]ven if one might hypothesize 'important reasons for treating residential and wireless telephone lines the same,' [] the TCPA itself presupposes the contrary—that calls to residential and wireless

---

[5] *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (identifying prohibited calls to "any telephone number assigned to a . . . *cellular telephone service* . . . .") *with* 47 U.S.C. § 227(b)(1)(B) (identifying prohibited calls to "any residential telephone line"); *see also* 47 U.S.C. § 227(b)(2)(B) (allowing FCC to make certain regulations broadly exempting calls to *residential lines*); 47 U.S.C. § 227(b)(2)(C) (allowing FCC to make regulations exempting certain calls to cellphones where such calls are not charged to called party); 47 U.S.C. § 227(c)(1) (permitting regulation relating to residential telephone subscribers' privacy rights).

[6] *Compare* 47 U.S.C. § 227(b)(2)(B) and 47 C.F.R. § 64.1200(a)(3) (establishing exceptions for certain commercial calls made to residential lines) *with* 47 U.S.C. § 227(b)(2)(C) and 47 C.F.R. § 64.1200(a)(9) (establishing different exceptions for certain commercial calls to cellular lines). Additionally, the TCPA uses the term "residential subscriber" in the definition of "established business relationship." 47 U.S.C. § 227(a)(2). Crucially, this definition applies only to the TCPA's facsimile provisions. *See id.* (citing 47 U.S.C. § 227(b)(1)(C)(i)). Fax machines, by definition, require a landline. *See* 47 U.S.C. § 227(a)(3) (applying to equipment using a "regular telephone line").

numbers warrant differential treatment." *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018); *see also Barr v. American Ass'n of Pol. Consultants, Inc*, 591 U.S. 610, 638 (2020) (Breyer, J. concurring) ("The statute limits robocalls to residential landlines, hospitals . . . . The only provision before us today, however, concerns robocalls to cell phones . . . "). Indeed, even the FCC has separately regulated the two categories of telephones.[7]

Plaintiff falsely suggests that HomeOver's argument has already been "rejected" by the Fifth Circuit, citing to *Cranor v. 5 Star Nutrition*, *L.L.C*, 998 F. 3d 686 (5th Cir. 2021). *See* Dkt. 9 at 23. But *Cranor* involved claims filed pursuant to **Section 227(b)** of the TCPA, which unlike the Section 227(c) claims at issue here, is the section of the TCPA that expressly refers to "cellular" phones. *Cranor*, 998 F. 3d at 690-91. *Cranor* does not help Plaintiff.

The only other circuit level case cited by Plaintiff, *Chennette v. Porch.com*, 50 F.4th 1217 (9th Cir. 2022), is not persuasive or controlling. It addressed whether "a cell phone that is used for both business and personal purposes can be a 'residential' phone within the meaning of § 227(c)." *Id.* at 1223. However, the defendant in *Chennette* <u>conceded</u> that the term "residential telephone subscriber" covered cell phones. *See id.* ("[D]efendants conceded that cell phones can be 'residential' for purposes of § 227(c)."). Because there was no adversarial consideration of the issue, the majority's opinion on this point is not binding or persuasive. *See Legal Servs. Corp. v. Velasquez*, 531 U.S. 533, 537 (2001) (cases are not binding precedent for issues not raised, argued,

---

[7] *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1859 n.4 (2012) ("[T]o avoid confusion as to which rules apply to calls directed to a cellular telephone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively"); *Matter of Cargo Airline Ass'n Pet. for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 FCC Rcd. 3432, 3439, n.4 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, and to be consistent with the TCPA's terminology.")

or analyzed). *Chennette* also predated *Loper Bright*, and thus is unpersuasive since it effectively found the FCC's views controlling. *See Chennette*, 50 F.4th at 1223-25.

The other district court cases cited by Plaintiff are poorly-reasoned and should not be followed.[8] They posit that the term "residential telephone subscriber" can logically be read more expansively than the term "residential telephone line" (a term accepted as describing a landline telephone) such that "the term 'residential subscriber' is indifferent to technology." *Cacho*, 739 F. Supp. 3d at 205. This logic is faulty.

First, "when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019). These cases wrongly find "residential telephone subscriber" has a broader meaning than the subscriber for a "residential telephone line." Instead, they suggest that a "residential telephone line" is a landline device, but a "residential telephone subscriber" is a subscriber to any kind of telephone used for non-business purposes. There is no basis to believe "subscriber" refers to something other than a subscriber to a "residential telephone line." When it comes to statutory interpretation, this Court should follow the adage that "Congress 'does not . . . hide elephants in mouseholes." *Washington v. United States Dept. of State*, 996 F.3d 552, 562 (9th Cir. 2021) (quoting *Whitman v. American Trucking Assn's*, 531 U.S. 457, 468 (2001)) (concluding statute's "use of the same phrase in the same way plainly means the same thing" as used elsewhere in statute).

Again, the TCPA distinguishes between residential lines and cellular phones throughout. Calls to cellphones are addressed in a different section of the TCPA separate from section 227(c).

---

[8] *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. July 3, 2024), *Wilson v. Hard Eight Nutrition LLC*, 2025 U.S. Dist. LEXIS 122504 (D. Or. June 27, 2025), *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025), and *Jackson v. Direct Bldg. Supplies LLC,* 2024 WL 184449 (M.D. Pa. Jan. 17, 2024.

47 U.S.C. § 227(b)(1)(a)(iii) (restricting autodialed calls to phone numbers "assigned to a [] cellular telephone service...").[9] After using "cellular" in Section 227(b), Congress omitted the term from Section 227(c), reflecting a clear intent to apply the NDNCR regulation to residential phones only. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

It is wrong to interpret "residential telephone subscriber" to encompass all technologies used for residential purposes. "Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018). A *residential* telephone is a type of telephone, while a *subscriber* is the subscriber to a residential telephone. Had Congress intended Section 227(c) to apply to <u>any</u> telephone subscriber, residential or cellular, it would have used the term "telephone subscriber."

If the term "residential telephone line" in Section 227(b) undisputably means a landline, *see Cacho*, 739 F. Supp. 3d at 206, then the cases cited by Plaintiff fail to grapple with that provision's consent exception. Consent would naturally come from a residential telephone *subscriber*. *See* 47 U.S.C. § 227(b); S. REP. 102-178, 7 ("[T]elemarketers must obtain the express consent of any residential telephone subscriber before placing an automated telephone call to that subscriber . . ."). "Residential telephone subscriber" must logically refer to a subscriber to a

---

[9] *See also Facebook v. Duguid*, 592 U.S. 395, 409 (2021) ("The [TCPA] separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones . . ."); *Salcedo v. Hanna,* 936 F.3d 1162, 1169 (11th Cir. 2019) ("[T]he findings in the TCPA show a concern for privacy within the sanctity of the home . . . By contrast, cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion").

residential telephone line, not be some broad disconnected term to reflect any subscriber using any type of phone for ill-defined "residential purposes."

This Court should adhere to the plain text of the TCPA and the meaning of the term "residential telephone subscriber" as it was written in 1991. The Supreme Court rejected the policy argument that the TCPA should be viewed as an "agile tool" to address changing technologies and prevent unwanted calls. *See Facebook v. Duguid*, 592 U.S. 395, 409 (2021). Policy goals, however laudable, cannot be used to alter the TCPA's plain language. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text."); *Insurance Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 316 (11th Cir. 2025) ("[A]textual good policy cannot overcome clear text.")

The term "residential telephone subscriber" does not encompass a cellphone subscriber. It is Congress' job to amend the TCPA. Each of Plaintiff's TCPA claims (Counts I - III) must fail.

### III. Plaintiff Failed To Allege That The Calls Were "Telephone Solicitations" Or Were Made For A "Telemarketing" Purpose

Each of Plaintiff's TCPA claims (Counts I, II and III) and her state law claim (Count IV) require her to allege a "telemarketing" purpose for the alleged calls.[10] *See* Dkt. 6 at 19-24. Because she has not done so, each of these claims must be dismissed.

Plaintiff entirely failed to address, and has thus conceded, HomeOver's argument (and cited caselaw) that the alleged calls between November 17, 2021 and March 10, 2022 are not "telemarketing" or "telephone solicitations" because they were made pursuant to Plaintiff's "prior express invitation" or "established business relationship."[11] Dkt. 6 at 20-21; *see also Cobble v.*

---

[10] Plaintiff confirms that her Internal DNC claim (Count III) is based on Section 47 C.F.R. § 64.1200(d)(3), which requires a "telemarketing purpose[]." *See* Dkt. 9 an 29.

[11] Plaintiff agreed to schedule appointments on at least three of the calls, and even indicated to the caller on one occasion that she "would call back to reschedule." *See* Dkt. 1 ¶¶ 27, 28, 31, 32.

*20/20 Communications, Inc.*, 2019 U.S. Dist. LEXIS 242332, at *10 (N.D. Tex. Feb. 21, 2019) (failure to address an argument concedes the issue).

Nor has she stated a claim based on the other calls she allegedly received on her cellphone between March through April 2021. As stated in Section II, *supra*, the DNC provisions arise under Section 227(c) which does not apply to calls made to cellphones. Regardless, she does not allege any of these calls encouraged her to purchase or avail of any goods or services, nor did she allege sufficient information regarding the nature and content of these other calls to infer a telemarketing purpose.[12] *See* Dkt. 1, ¶ 25; *see also Hunsinger v. Dynata LLC*, 2023 U.S. Dist. LEXIS 37879, at **19-20 (N.D. Tex. Feb. 7, 2023) (dismissing similar claims for lack of factual allegations that call or text "encouraged [plaintiff] to purchase, [etc.]" any goods or services).

She also failed to state claims based on calls to her landline.[13] Even assuming the January 3, 2022 call to Plaintiff's landline was a "telephone solicitation" (it was not), she has not alleged a second call to that number from HomeOver as required under Section 227(c).[14] Her statement in her Opposition that "TM Roofing [] is Defendant HomeOver" (Dkt. 9 at 27) is not alleged in the Complaint. And, her reliance on the callback number ending in "9138" is contradicted by her allegation that the number belongs to Storm Leads, not HomeOver. *See* Dkt. 1, ¶ 29. Because Plaintiff failed to allege an essential element of each of her claims, they fail.

---

[12] Because these other calls allegedly took place at least seven months before the November 2021 calls, it cannot be reasonably inferred that they followed the same format or content as the later calls. This case is thus distinguishable from the case cited by Plaintiff where the calls at issue were made in close temporal proximity. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (calls at issue made one day apart).

[13] Plaintiff is not asserting an Internal DNC claim based on calls to her landline. Dkt. 9 and 29.

[14] Plaintiff did not cite any caselaw holding that calls to different phone numbers can be lumped together to meet the requisite number of calls under Section 227(c)(5). *See* Dkt. 9 at 26. Regardless, Plaintiff failed to allege any violative calls to her cellphone and so the point is moot.

**IV.    Plaintiff's Claims Fail For Other Reasons**

As to the Caller ID claim, Plaintiff's own case acknowledges that the "dominant" view remains that 47 C.F.R. § 1601(e)(1) does <u>not</u> afford a private right of action. *See Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025) ("*Dobronski II*"). The *Dobronski II* court, however, reached the opposite conclusion because it assumed (incorrectly) that the regulation must have been promulgated under the TCPA and found Section 227(c) as the only "possible" candidate.[15] *Id.* at 377. But the regulation did <u>not</u> derive from the TCPA, and was instead adopted as part of the FCC's creation of a federal model for interstate caller ID. *See Worsham v. Travel Options*, 2016 U.S. Dist. LEXIS 118774, at *10-12 (D. Md. Sep. 1, 2016) (discussing legislative history). The majority view is correct, and Plaintiff's Caller ID claim fails.

Plaintiff's National DNC claim should further be dismissed with prejudice because she does not indicate she can amend to state that she personally registered either of her phone numbers with the NDNCR.

Finally, Plaintiff does not dispute that her request for injunctive relief is overbroad, and instead argues only that this motion is not a proper vehicle for challenging it. Although Plaintiff relies on out-of-circuit authority, district courts from this Circuit routinely dismiss overbroad claims for injunctive relief on a 12(b)(6) motion. *See e.g.*, *Welsh v. Correct Care LLC*, 2020 U.S. Dist. LEXIS 30358, at **42-44 (N.D. Tex. Jan. 30, 2020); *Williams v. Recovery School Dist.*, 859 F.Supp.2d 824, 833 (E.D. La. 2012). The same outcome follows here.

**II.    CONCLUSION**

For the reasons stated herein, HomeOver respectfully requests that the Court issue an Order dismissing Plaintiff's claims against HomeOver with prejudice.

---

[15] Plaintiff stated the *Dobronski II* court "concluded its previous reasoning was incorrect." Wrong. That case was decided by a different judge.

**Dated**: December 16, 2025

                                        Respectfully Submitted,

                                        **WOMBLE BOND DICKINSON (US) LLP**

                                        By:   */s/ R. Kyle Hawes*
                                                 R. Kyle Hawes
                                                 State Bar No. 00796725
                                                 717 Texas Avenue, Suite 2100
                                                 Houston, Texas 77002
                                                 Telephone: (346) 998-7821
                                                 Facsimile: (346) 998-5901
                                                 Email: kyle.hawes@wbd-us.com

                                        **ATTORNEYS FOR DEFENDANT HOMEOVER GENERAL CONTRACTORS, LLC**

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing document has been forwarded to all known counsel in this cause in accordance with the Federal Rules of Civil Procedure on this 16th day of December 2025.

                                                                    */s/ R. Kyle Hawes*
                                                                    R. Kyle Hawes