**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| KIMBERLY STARLING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-993-JDK |
| | § | |
| HOMEOVER GENERAL | § | |
| CONTRACTORS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant HomeOver General Contractors' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket No. 6.

For the reasons explained below, the Court grants HomeOver's motion to dismiss Counts I and III and denies the motion to dismiss the remaining Counts.

**I.**

Plaintiff Kimberly Starling filed this case, purporting to be a class action, under the Telephone Consumer Protection Act ("TCPA") of 1991, codified at 47 U.S.C. § 227. The named Defendants are HomeOver and Storm Leads Innovation—an entity that has not been served and has not appeared.

Two telephone numbers are relevant here: Starling's 689 number is alleged to be a residential, non-commercial cellular telephone number; Starling's 442 number is alleged to be a residential, non-commercial landline telephone number. Docket No. 1 (Complaint, herein "Compl.") ¶¶ 19–20. Starling states that both "numbers were listed on the Do Not Call Registry for years prior to the calls at issue." *Id.*

1

Starling alleges that she received prohibited telephone solicitations from Storm Leads, acting as an agent for HomeOver, at both phone numbers from November 2021 to June 2022.  According to Starling, "Storm Leads Innovation violated the TCPA by making telemarketing calls to Plaintiff . . . [who was] listed on the National Do Not Call Registry . . . by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as [by] calling people who had previously asked to no longer receive calls."  Compl. ¶ 3.  "These calls were placed by Storm Leads for the benefit of HomeOver General Contractors, LLC, who hired Storm Leads to place the calls at issue."  *Id.*

The calls are alleged as follows:

| Date | Caller | Starling's Phone # |
|---|---|---|
| November 16, 2021 | Call displaying 817-562-4753; Starling alleges that "the caller identified themselves as 'HomeOver' and solicited Plaintiff to purchase and schedule a roofing inspection"; Starling made an appointment for the next day.  Compl. ¶ 27. | Cell (689#) |
| November 17, 2021 | "An individual identifying himself as Clayton Kramer from 'HomeOver General' called Plaintiff to confirm the appointment and texted Plaintiff a business card.  Plaintiff informed him Plaintiff was not available and would call back to reschedule."  Compl. ¶ 28. | Starling does not identify which phone number was called. |
| November 17, 2021 | Starling emailed the owner of HomeOver—Josh Nelson—"regarding the illegal calls."  No further information about the email is alleged by Starling.  Nelson then called Starling and provided contact information for Storm Leads, | Starling does not identify which phone number was called. |

2

|  | which Nelson stated was responsible for the calls.  Compl. ¶ 29.  Nelson gave 888-459-9138 as a callback number.  *Id.* |  |
| --- | --- | --- |
| January 3, 2022 | Call displaying 817-753-1543.  Caller identified himself as calling from "HomeOver General Contractors." Starling made a roofing inspection appointment.  Caller provided 888-459-9138 as a callback number.  Compl. ¶ 31. | Landline (442#) |
| February 10, 2022 | Call displaying 817-285-5041.  Caller identified himself as calling from "HomeOver General Contractors."  Caller again provided 888-459-9138 as a callback number.  Starling again made an appointment, but no one appeared for the inspection.  Compl. ¶ 32. | Cell (689#) |
| March 10, 2022 | Call displaying 469-896-0151.  Caller identified himself as calling from "HomeOver General Contractors." Starling asked to be added to the caller's do-not-call list.  Compl. ¶ 33.  This is the first time this allegation is made in the complaint. | Cell (689#) |
| June 6, 2022 | Call displaying 817-945-4531.  Caller "used a fake alias—'TM Roofing.'"  Caller provided the 888-459-9138 callback number.  Starling states that she and the caller could not agree on a time for a roofing inspection.  Compl. ¶ 34. | Landline (442#) |
| June 6, 2022 | Eight minutes later, the same caller called again to reschedule, and an appointment was scheduled with Starling.  Compl. ¶ 35. | Landline (442#) |

Based on these calls and the information provided to Starling in her correspondence with Josh Nelson, HomeOver's owner, Starling alleges that Storm Leads is a "lead generator who was hired by HomeOver to sell leads to HomeOver

using HomeOver's own brand name." Compl. ¶ 42.  Therefore, Starling alleges, "[t]he purpose of the calls sent by Defendant Storm Leads was . . . to solicit the Plaintiff to sign up for the Defendant HomeOver's services." *Id.* ¶ 43.  "HomeOver hired Storm Leads to contact potential new leads and customers en masse and only sell them the purportedly interested ones." *Id.* ¶ 45.

The complaint asserts four counts against HomeOver and Storm Leads:  Count I, violation of the TCPA, 47 U.S.C. § 227 (DNC registry claim); Count II, violation of the TCPA, 47 U.S.C. § 227 (caller ID claim); Count III, violation of the TCPA, 47 U.S.C. § 227 (internal DNC claim); and Count IV, violation of Texas Business and Commerce Code § 302.101.

## II.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When deciding a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (citation omitted).  Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must "make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).  "A plaintiff need not submit evidence to establish a prima facie case at the pleading stage; rather, to survive a motion to dismiss, a plaintiff need only 'plausibly allege facts going to the ultimate elements of the claim.'"

*Stamps v. Univ. of Texas at Austin*, 2022 WL 526169, at *4 (W.D. Tex. Feb. 22, 2022) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)).

### A.

HomeOver first seeks dismissal of all claims because Starling failed to allege that HomeOver itself made any unlawful calls and failed to allege that HomeOver is vicariously liable for the calls made by Storm Leads.  Docket No. 6 at 8–12.  Starling, however, adequately alleged that Storm Leads acted as HomeOver's agent.

Under the TCPA, an entity that does not directly initiate a call may nevertheless be "held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."  *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 24 (2013); *see also, e.g., Hunsinger v. Dynata LLC*, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023) ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller."); *Guadian v. DebtBlue LLC*, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024) (same); *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025) (same); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (finding "no cause to question" the *Dish Network* holding "that, under federal common-law principles of agency, there is vicarious liability for TCPA violations").

One way of alleging an agency relationship is stating that the principal assigned the agent's task and controlled the means and details of how the agent would

accomplish the task. *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008). Another way is alleging that the principal "ratified" the agent's acts. *Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732, 735 (E.D. Tex. 2007). "Ratification may occur when a principal, though he [or she] had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *London v. Gums*, 2014 WL 546914, at *8 (S.D. Tex. Feb. 10, 2014) (quoting *Land Title Co. of Dallas., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)).

Here, Starling alleges that HomeOver ratified Storm Leads's unlawful calls. According to Starling, Storm Leads called her to screen for a potential sale and collected information for HomeOver to facilitate an appointment. *See* Compl. ¶¶ 29–38. HomeOver then followed up by calling Starling and attempting to schedule an appointment to inspect her roof. *Id*. ¶ 28. Indeed, Starling alleges that, when she spoke with HomeOver's owner, she told him of the calls. Compl. ¶ 29. The calls then continued for several months, and HomeOver continued to attempt to schedule a roof inspection with Starling. *Id.* ¶ 31. These facts, as pleaded, demonstrate that HomeOver had "full knowledge of the underlying circumstances" and retained "the benefits of a transaction." *Schakosky*, 634 F. Supp. 2d at 735. Thus, construing Starling's allegations in the light most favorable to her, the Court concludes that Starling has sufficiently alleged that HomeOver may be vicariously liable for Storm Leads's purported violations of the TCPA under a ratification theory.[1]

---

[1] The cases cited by HomeOver are inapposite because the principals in those cases were unaware of the calls, unlike HomeOver here. *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, 2025 WL

Accordingly, the Court denies HomeOver's motion to dismiss the claims for failing to plead an agency relationship.

**B.**

Count I alleges that Home Over violated the TCPA by initiating a "telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry."  Docket No. 1 ¶ 77. HomeOver argues that this claim should be dismissed because the complaint fails to allege that the calls to Starling were "solicitations" prohibited under the TCPA.  The Court agrees.

The TCPA defines a prohibited "solicitation" as a telephone call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but does *not* include "a call . . . to any person with whom the caller has an established business relationship."  47 U.S.C. § 227(a)(4).  An "established business relationship" means a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity."  47 C.F.R. § 64.1200(f)(5).  A plaintiff who schedules an appointment with a solicitor establishes a business relationship, and thus subsequent calls are not "solicitations." *E.g.*, *Morris v. Copart*, 2016 WL 6608874, at *9 (E.D. Tex.

---

1145266, at *5 (W.D. Tex. Apr. 15, 2025) (dismissing TCPA claims and finding no agency relationship based on a ratification theory because plaintiff failed to allege that defendant knew of the telemarketer's calls); *Callier v. SunPath Ltd.*, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020) ("Although [defendants] undoubtedly benefited from the marketing calls, nothing in the pleadings indicates either [was] aware of the actions allegedly in violation of the TCPA," which "is necessary to meet the standard for ratification . . . .").

Nov. 9, 2016) ("Plaintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the stated purpose of that relationship—to effectuate Plaintiff's donation of a car."); *Callier v. Optimum Solar USA*, 2024 WL 2044832, at \*6 (W.D. Tex. Mar. 21, 2024), *report and recommendation adopted sub nom. Callier v. Optimum Solar USA & Misael Guzman*, 2024 WL 1531415 (W.D. Tex. Apr. 9, 2024) ("Plaintiff['s] setting an appointment with the telemarketer constitutes an invitation for a telephone solicitation from Defendant Guzman.").

Here, Starling alleges that she made an appointment with HomeOver to inspect her roof during the very first call to her cellphone on November 16, 2021. Compl. ¶ 27.  The next day, a HomeOver employee called Starling to confirm the appointment.  *Id.* ¶ 28.  Starling then invited further contact from HomeOver by telling the caller that she was unavailable and would have to call back to reschedule. *Id.* ¶ 28.  Although Starling claims that she also emailed the owner of HomeOver "regarding the illegal calls," the complaint does not say that Starling terminated the parties' business relationship.  *Id.* ¶¶ 29–30.  In any event, the next time Starling was contacted, she *again* made an appointment for a roof inspection.  *Id.* ¶ 31.  Two more calls followed until Starling requested to be added to the internal do-not-call list on March 10, 2022.  *Id.* ¶ 33.  Thereafter, HomeOver made no further calls to Starling.

Accordingly, the Court concludes that Count I does not state a violation of 47 U.S.C. § 227(c) and should be dismissed.

8

## C.

Count II alleges that HomeOver violated the TCPA by making telemarketing calls without providing the caller identification information.  Docket No. 1 ¶ 85.  Starling cites 47 C.F.R. § 64.1601(e)(1) as the source of the caller-identification requirement.  *Id.* ¶¶ 83–84.  HomeOver argues that this Count should be dismissed because there is no private right of action to enforce § 64.1601(e)(1) and because the calls were not "telemarketing" calls.  Docket No. 6 at 18.  HomeOver, however, misinterprets both the regulation and the statute.

Section 64.1601(e)(1) states:  "[A]ny person or entity that engages in telemarketing, as defined in section 64.1200(f)(1) must transmit caller identification information," including "either CPN [calling party number] or ANI [automatic numbering information], and, when available by the telemarketer's carrier, the name of the telemarketer."  When the Federal Communications Commission promulgated § 64.1601(e), it cited 47 U.S.C. § 227(c) and (d) as authority.  *See* 68 Fed. Reg. 44170.  Section 227(c) states that a person who has received a telephone call "in violation of the regulations prescribed under this subsection" may bring "an action based on [the] violation."  Section 227(d), in contrast, includes no private right of action.

Thus, the issue is whether § 64.1601(e)(1) is a regulation "prescribed under" § 227(c) or § 227(d).  After reviewing the statute, the regulation, and the regulatory history, the Court concludes that § 227(c) is the source of the FCC's authority to promulgate § 64.1601(e)(1).  Section 227(c) directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy

9

rights to avoid receiving telephone solicitations to which they object," including by comparing and evaluating "telephone network technologies."  47 U.S.C. § 227(c)(1). For years, the FCC "has considered caller ID a § 227(c) 'network technology.'"  *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 577 (E.D. Pa. 2025) (citing the regulatory history).  Further, the FCC promulgated § 64.1601(e) simultaneously with its creation of the National Do-Not-Call database as part of a general package of "new rules to provide consumers with several options for avoiding unwanted telephone solicitations."  68 Fed. Reg. 44144 (citing 47 U.S.C. § 227(c) as the FCC's authority to create the Do-Not-Call list).  And the FCC expressly referred to caller ID as one of the "network technologies" it evaluated "to protect consumer privacy" "as required by 47 U.S.C. § 227(c)(1)(A)."  68 Fed. Reg. 44147.  "In sum, the administrative history unequivocally demonstrates that caller ID is a network technology, assessed by the FCC as one available method to protect residential telephone subscribers' privacy rights under § 277(c)."  *Newell*, 791 F. Supp. 3d at 578; *see also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (holding same); *Novia v. Mobiz, Inc.*, 2026 WL 752181 (D. Mass. March 17, 2026) (holding same).[2]

---

[2]  Some courts have held that § 227(d) is the source of the FCC's authority to promulgate § 64.1601(e). *See Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *2 (E.D. Mich. Sept. 29, 2021); *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024).  But these cases are unpersuasive, as § 227(d) is expressly limited to telemarketing calls made using fax machines, automatic dialing systems, and artificial voice messages.  Section 64.1601(e), in contrast, is not so limited.  *See Newell*, 791 F. Supp. 3d at 579 ("It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority.").

HomeOver also argues that Starling failed to sufficiently allege that the calls constituted "telemarketing." Docket No. 6 at 18. "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200. Notably, however, the exception for "business relationships," present in the definition of "solicitation" in § 227(a)(4) as discussed above, is absent here. Further, Starling alleges that HomeOver, acting through Storm Leads, initiated the telephone calls at issue here for the purpose of encouraging the purchase of roofing services. Compl. ¶¶ 3, 38. This is sufficient to allege that the calls were "telemarketing."

The request to dismiss Count II is denied.

## D.

Count III alleges that HomeOver violated the TCPA by "sending telemarketing calls" to Starling despite her request to be added to HomeOver's internal do-not-call list. Docket No. 1 ¶¶ 90–92. HomeOver argues that this count fails for several reasons, including that Starling does not allege that HomeOver called her after making the request. Docket No. 6 at 17–18. The Court agrees.

Starling alleges that she requested HomeOver to "place her cellular telephone number on Defendant HomeOver's internal Do Not Call list" during the March 10, 2022 call to her cell. Docket No. 1 ¶¶ 25, 33. The only call allegedly made to Starling after this request, however, was to Starling's landline from "TM Roofing." Docket No. 1 ¶¶ 34–35. Thus, this claim fails because HomeOver did not call her cell after she

11

made her do-not-call request.  The claim also fails because Starling does not adequately allege that TM Roofing was in fact HomeOver.  Starling claims that TM Roofing was "a fake alias" for HomeOver, but she pleads no facts to support the claim, and in fact, Starling alleges that the callback number provided by TM Roofing belonged to Storm Leads, not HomeOver.  Docket No. 1 ¶¶ 29, 34.

E.

Count IV alleges that HomeOver violated Texas Business and Commerce Code ("TBCC") § 302.101 by making telephone solicitations despite "not holding a registration certificate for the business location from which the telephone solicitation is made."  Docket No. 1 ¶ 94.  HomeOver argues that this claim should be dismissed because the complaint fails to allege that § 302.101 applies here.

Section 302.101 prohibits a seller from "mak[ing] a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made."  TEX. BUS. & COMM. CODE § 302.101(a).  HomeOver first argues that it never made a "telephone solicitation" to Starling—for the same reason it did not make a "solicitation" under the TCPA, as discussed above.  Docket No. 6 at 19.  But the TBCC defines "solicitation" broadly to mean a call "initiated by a seller . . . to induce a person to purchase, rent, claim, or receive an item."  § 302.001(7).  And, unlike the TCPA, the TBCC does not include an exception for calls "to any person with whom the caller has an established business relationship," 47 U.S.C. § 227(a)(4).  Thus, the complaint adequately alleges that HomeOver made a "telephone solicitation" to Starling.

12

Compl. ¶ 27 ("The caller identified themselves as 'HomeOver' and solicited Plaintiff to purchase and schedule a roofing inspection in connection with a roof-replacement job."); *id.* ¶ 31 ("The caller identified as calling from 'HomeOver General Contractors,' [and] solicited Plaintiff for a roof inspection related to roof-replacement work.").

HomeOver also argues that Starling never alleged she was located in Texas or that the calls were made from Texas, as § 302.101 requires.  But the complaint states that Starling's cell and landline numbers had an 817-area code, which is located in North Texas.  Compl. ¶¶ 19–20.  And she alleges that HomeOver is "a Carrollton, Texas-based company that sells roofing and contracting services."  Compl. ¶ 5.  Thus, viewing the allegations in the light most favorable to Starling, the Court concludes that Starling has alleged that she was "located in this State," as required by § 302.101.

HomeOver's request to dismiss this count is denied.

## F.

Finally, HomeOver seeks the dismissal of two of Starling's requests for relief—attorneys' fees and injunctive relief.  Docket No. 6 at 19.  Determining the proper remedy at this stage in the proceeding, however, is premature.  *See, e.g., Park v. Kruse*, 2013 WL 12124253, at *6 (N.D. Tex. Mar. 8, 2013) ("Consideration of particular remedies requested is premature at the motion to dismiss stage.").

## III.

In sum, the Court **GRANTS** HomeOver's motion to dismiss Counts I and III and **DISMISSES** these claims **WITHOUT PREJUDICE**.  The motion to dismiss is **DENIED** in all other respects.

So **ORDERED** and **SIGNED** this **8th**  day of **June, 2026.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

14